COPPER LIQUOR, INC., et al., Plaintiff,

Robert Earl Basham, Jr., Executor or the Estate of Harold Letcher, Deceased, Plaintiff-Appellee Cross-Appellant,

v.

ADOLPH COORS COMPANY, Defendant-Appellant Cross-Appellee.

No. 81–1358.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1982.

Opinion on Granting of Rehearing and Rehearing En Banc Nov. 16, 1982.

Leo N. Bradley, Earle D. Bellamy, II, Golden, Colo., for defendant-appellant cross-appellee.

James R. Warncke, San Antonio, Tex., Jimmie D. Oglesby, Midland, Tex., for plaintiff-appellee cross-appellant.

Before RUBIN and REAVLEY, Circuit Judges, and HUNTER *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

To the victor in an antitrust suit belongs the "cost of suit, including a reasonable attorney's fee." [1] In this, the third appearance of this case before our court, we evaluate the reasonableness of costs and attorneys' fees awarded by the district judge on remand from, and according to the specific directions of, this court in an earlier appeal.

We find that the district court correctly construed and applied the instructions we gave in remanding the case, and that the amount allowed as attorneys' fees is supported by the record. We, therefore, affirm it. We find that, in arriving at this sum, the district judge acted within his discretion when he reduced the lodestar rate by 25%. However, we find no basis for a similar reduction in costs and expenses. Finally, we remand for a determination of the amounts allowable as reimbursement for costs and expenses because this amount was based on estimates and was not properly itemized or verified.

## I.

Harold Letcher [2] brought this antitrust action in 1970 against Adolph Coors Company ("Coors") to recover damages that allegedly resulted when a Coors distributor refused to sell Coors beer to Letcher's store.

In 1973, a jury found Coors liable to Letcher and awarded him $101,011 in damages. The district judge trebled the damage award to $303,033 and awarded attorneys' fees of $75,000. In the first appeal to this court, we upheld the finding of liability under the antitrust laws, but remanded the case for further proceedings to determine whether the antitrust violation caused Letcher any injury, and, if so, the amount of that damage. We also vacated the award of attorneys' fees and directed that if, on remand, injury and damages were awarded, the district court should also award reasonable attorneys' fees. [3]

At the second trial, the jury found that Letcher was injured by Coors's antitrust violation and awarded $15,000 in damages. The district judge held a hearing on the appropriate amount of attorneys' fees and on July 31, 1978, subsequent to that hearing, entered judgment against Coors for trebled damages of $45,000 and attorneys' fees of $45,000. On a second appeal,[4] the damage award was affirmed, but we determined that the "attorneys' fee award was so low in this case as to constitute an abuse of discretion," [5] and remanded the case for further proceedings relating to attorneys' fees.

Considering the case for the third time, the district judge entered an order on December 29, 1980, relating to attorneys' fees and costs prior to the time of the appeal in *Copper Liquor II*. The judge adopted the findings of fact made in his July 31, 1978, order concerning attorneys' fees and revised only his conclusions of law. He determined that the appropriate award for attorneys' fees and costs for the period up to July 31, 1978, was $244,687.50.[6] In March 1981, the

---

\* District Judge of the Western District of Louisiana, sitting by designation.

1. 15 U.S.C. § 15 (Supp. IV 1980).

2. Letcher died during the course of these proceedings and accordingly his executors, Basham, Anthony, and Loving, were substituted as plaintiffs. For convenience, we refer to the plaintiffs collectively as Letcher.

3. *Copper Liquor, Inc. v. Adolph Coors Co.*, 506 F.2d 934 (5th Cir. 1975) (*Copper Liquor I*).

4. *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir. 1980) (*Copper Liquor II*).

5. *Id.* at 583.

6. He computed the award as follows:

Attorneys' Fees and Costs
Through July 31, 1978

| | | | |
|---|---|---|---|
| Lead Counsel | 2,000 hrs. | at $100/hr. | $200,000.00 |
| Associate Counsel | 1,200 hrs. | at $75/hr. | 90,000.00 |
| Local Counsel | 150 hrs. | at $75/hr. | 11,250.00 |
| | | | $301,250.00 |
| Plus Expenses | | | 25,000.00 |
| | | | $326,250.00 |

district judge held a hearing to determine the appropriate amount of attorneys' fees and costs for work after July 31, 1978, relating to the appeal in *Copper Liquor II* and time spent thereafter on remand. The judge entered an order for attorneys' fees and costs during this period of $21,778.93,[7] making the total award of fees and costs $266,466.43. Both parties promptly appealed, Coors seeking a reduction in the amount awarded and Letcher seeking an increase.

## I. ATTORNEYS' FEES

Judge Wisdom's thoughtful opinion in *Copper Liquor II* summarized the appropriate procedure for determining a reasonable attorneys' fee in the Fifth Circuit. We borrow from and condense that discussion here.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), listed twelve factors that must be considered by a district court in this circuit in awarding a statutorily authorized attorneys' fee:

(1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee [for similar work in the community], (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the

professional relationship with the client, and (12) awards in similar cases.

The district judge is required to " 'explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected his decision.' " *Copper Liquor II*, 624 F.2d at 581 (quoting *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1299–1300 (5th Cir. 1977)). In *Copper Liquor II*, we stated that, although the "district court's findings of fact are well developed[,] the order . . . does not articulate the reasons for awarding attorneys' fees of $45,000." *Id.* at 582.

■ Of the twelve *Johnson* factors, Judge Wisdom stated that recent Fifth Circuit decisions suggested that four of the factors deserve "special heed": "(1) the time and labor involved, (5) the customary fee, (8) the amount involved and the results obtained, and (9) the experience, reputation, and ability of counsel." *Id.* at 583. These factors should be considered in the following framework:

(1) Ascertain the nature and extent of the services supplied by the attorney;

(2) Value the services according to the customary fee and quality of the legal work; and

(3) Adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case.

*Id.* (relying on *First Colonial*, 544 F.2d at 1299–1300). *Johnson*, thus interpreted, adopts a standard much like the lodestar method of the Second,[8] Third,[9] and District

---

The judge then reduced the total by 25% after "[c]onsidering awards in similar cases and weighing the size of the damage award against the vindication of the public right," awarding a total of $244,687.50 for the period prior to July 31, 1978 (.75 × $326,250.00).

**7.** The district judge computed this amount as follows:

Attorneys' Fees and Costs
Subsequent to July 31, 1978

| | | |
|---|---|---|
| Lead Counsel | 175 hrs. at $150/hr. | $26,250.00 |
| Associate Counsel | 23 hrs. at $100/hr. | 2,300.00 |
| | | $28,550.00 |
| Plus Expenses | | 488.57 |
| | | $29,038.57 |

The judge also reduced this amount by 25%, and awarded $21,778.93 in fees for the period subsequent to July 31, 1978 (.75 × $29,038.57). The total fee award, therefore, was $266,466.43 ($244,687.50 + $21,778.93).

**8.** *E.g., City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977).

**9.** *E.g., Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*en banc*).

of Columbia [10] Circuits.[11] The "lodestar" is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is then adjusted to reflect other factors such as the contingent nature of the suit and the quality of representation.[12]

In *Copper Liquor II*, we accepted the district court's factual findings as to the number of hours spent on the case by Copper Liquor's counsel and their customary fees;[13] however, we concluded that the "attorneys' fee award was so low in this case as to constitute an abuse of discretion"[14] because the district judge "acted on [the] improper assumption" that "he should deny attorneys' fees in excess of the award of damages." *Copper Liquor II*, 624 F.2d at 584. The opinion continued:

> The district court's findings reveal that the remaining *Johnson* factors such as preclusion of other employment, time limitations imposed by the client, and the nature and length of the professional relationship with the client, are not of great significance. Nevertheless, *the district court should have expressly stated this in his conclusions of law.*

*Id.* (emphasis added).

Finally, we directed the district court to "compensate the plaintiff's counsel for the value of their services rendered in connection with this appeal." *Id.*

In this appeal, Coors asserts that the district judge "abused his discretion" in determining the number of hours used for the purpose of calculating the value of the services performed by plaintiff's attorneys and erroneously included an unreasonable amount of time spent before this lawsuit was ever filed, time spent without any corresponding description of services rendered, unnecessary duplication of effort, and time spent on unsuccessful claims and issues. As to the number of hours spent by Letcher's attorneys and the reasonable customary rate, Coors may not challenge the factual findings already accepted by us in *Copper Liquor II*. We there implicitly sustained the findings determining the number of hours spent by plaintiffs' counsel, and the reasonableness of the hourly fees.[15] The district judge's determinations as to the number of hours spent by Letcher's counsel after July 31, 1978, in preparation for *Copper Liquor II* and later on remand, and the customary fees for that period, however, are properly reviewable by us in this proceeding. Because these are findings of fact, the standard for review is not "abuse of discretion," but whether they are clearly erroneous. Fed.R.Civ.P. 52(a).

In assessing the attack on the total award as exorbitant and the counter-attack

10. *E.g., Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (*en banc*).

11. *Copper Liquor II*, 624 F.2d at 583 n.15 ("The *Johnson* test, as interpreted in *First Colonial*, is similar to the Third Circuit's 'lodestar' method of computing attorneys' fees."); E. Larson, Federal Court Awards of Attorney's Fees 136 (1981) ("The *Johnson* approach, it needs to be emphasized, is not in conflict with the lodestar method. Both the *Johnson* approach and the lodestar method utilize virtually the same factors. The lodestar method simply goes a step further and explains *how* the factors are to be used.... This lack of conflict was made quite clear recently by the Fifth Circuit itself in [*Copper Liquor II*], where the court held that the *Johnson* factors should be applied through the lodestar method[.]").

12. *See Copeland v. Marshall*, 641 F.2d at 891–94.

13. The district court found that the plaintiff's lead counsel had worked about 2,000 hours on this case and had itemized at least 975 hours. Associate counsel spent 1,200 hours preparing the case of which at least 825 hours were itemized. Lead counsel was assisted by local counsel who itemized 150 hours of legal services. Significantly, the court found "little unnecessary duplication of effort among Plaintiffs' counsel." The district court stated that the customary fee for [handling an antitrust case in federal court] was $100 for lead counsel and $75 for assistant counsel and that the plaintiff's lead counsel had considerable experience with antitrust cases. The plaintiff's actual expenses, between $16,000 and $25,000, were included in the award of $45,000.
*Copper Liquor II*, 624 F.2d at 583–84.

14. *Id.* at 583.

15. *See* note 13 *supra*.

on it as inadequate, our appellate role is further limited by the discretion imparted to the trial judge in awarding attorneys' fees.[16] While the subsidiary fact findings are reversible only if clearly erroneous, a second limitation on our review of the total fee is set by the precept that its amount lies in the trial judge's discretion, and it is to be recalculated only if that discretion is abused. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 720.

### A. Amount of Time Spent

For the reasons we have set forth, the law of the case requires us to reject Coors's challenge to the findings as to time spent on work before the *Copper Liquor II* appeal, and we may consider its attacks only as to hours spent subsequent to July 31, 1978. Coors argues that this calculation was excessive because it includes time spent without supporting documentation in the form of time records, time spent on claims and issues on which Letcher did not prevail, time spent without a description of the services rendered, and time spent rendering duplicating services.

### 1. Time Records

■ We have repeatedly admonished counsel that time records should be kept.[17] In any case involving a statute that allows attorneys' fees, the district court should instruct counsel early in the proceedings concerning the necessity for time records. We have held, however, that time sheets are not indispensable.[18] Based on our past deci-

sions, as well as the law of the case as reflected in *Copper Liquor II*, the district court correctly concluded that fees should not be denied because counsel kept no records.

We add, however, that any attorney who files or defends a suit in which there is a possibility that he will seek a court award for fees should by now recognize that careful time records should be kept. The fact that counsel normally does not keep records, or maintains casual ones, or handles cases on a contingent fee basis does not excuse failure to observe good business practice when he seeks to have someone other than the acceding client pay for his services.

■ Because the amount of time devoted to a case is an essential element of the computation of reasonable fees, and because it is difficult to determine that component without adequate documentation, the Court of Appeals for the District of Columbia has recently announced a rule that no allowance of fees will henceforth be made unless "contemporaneous, complete, and standardized time records [are available that] accurately reflect the work done by each attorney,"[19] absent such exceptional circumstances as would render denial of such fees unjust.[20] In that circuit a casual after-the-fact estimate will be insufficient to support an award. The court further held that, if the "reasonableness of the hours claimed becomes an issue, the applicant should voluntarily make his time charges available for inspection by the District Court or opposing counsel on request."[21] While this circuit has not adopt-

---

**16.** *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717. *See also Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir. 1980); *Davis v. Fletcher*, 598 F.2d 469 (5th Cir. 1979); *Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978).

**17.** *Harkless v. Sweeny Indep. Sch. Dist.*, 608 F.2d 594, 597 (5th Cir. 1979) ("it is by far the better practice to keep time sheets"); *Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 690 n.10 (S.D.Tex.1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978).

**18.** *Harkless v. Sweeny Indep. School Dist.*, 608 F.2d at 597; *Cruz v. Beto*, 453 F.Supp. 905, 908 (S.D.Tex.1977), *aff'd*, 603 F.2d 1178 (5th Cir. 1979).

**19.** *National Ass'n of Concerned Vets. v. Sec. of Defense*, 675 F.2d 1319, 1326–27 (D.C.Cir.1982) (*per curiam*). *See also King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) ("As a starting point, the attorney or attorneys must submit to the court a detailed record of the time spent on the case and the duties performed.").

**20.** 672 F.2d at 1326.

**21.** *Id.* at 1327 (footnote omitted).

ed such a rule, prudent counsel will adhere to that procedure.

### 2. Time Spent on Unsuccessful Issues

Letcher did assert a damage theory in which he did not prevail: that, after losing his distributorship for Coors beer, he experienced a loss on sales of all products and, therefore, was forced to reduce his markup from an average of 25% to an average of 15% even though sales were actually increasing.[22] Additionally, Letcher attempted to prove loss of goodwill as an element of damages. This theory was rejected on appeal. *Copper Liquor I,* 506 F.2d at 950–55. On remand the same measure of damage theory was again asserted unsuccessfully.[23] Injury was, however, established, and damages were awarded, albeit on an alternative basis. *Copper Liquor II,* 624 F.2d 579–81.

There is no consensus among the circuit courts of appeal on the extent to which a prevailing party should recover for time spent in pursuing legal theories on which he was unsuccessful.[24] Sitting en banc, we recently indicated that a fee award may be discounted for time spent on claims clearly without merit that made no contribution to success on other claims. *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981) *(en banc), cert. granted sub nom. Ledbetter v. Jones,* 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970 (1981), *cert. limited to one issue,* 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993 (1981), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). We stated,

> [h]owever, the mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed.... Instead the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case.

636 F.2d at 1382 (citation omitted).

■ Following the *Jones v. Diamond* precept we conclude that the time spent in pursuing the unaccepted damage theory had a sufficient relationship with the successful prosecution of the case to warrant compensation for time spent in developing it.[25]

### 3. Other Considerations

■ Finally, the district court implicitly determined that the amount of time for which it awarded fees was properly devoted to the prosecution of this case, that the services rendered were adequately described to the extent they were not evident to the court, and that such services were not

---

**22.** Letcher was forced to rely on this theory because he was attempting to recover for damages caused "because his supplier cut off his supply of a product he had always sold for less than it cost him." *Copper Liquor I,* 506 F.2d at 950–51. In the second trial evidence was presented that not all Coors beer was sold at a loss. *Copper Liquor II,* 624 F.2d at 580.

**23.** *Copper Liquor II,* 624 F.2d at 580 ("The evidence of lost profits presented by the plaintiff at the second trial was similar to the evidence introduced at the first trial.")

**24.** E. Larson, *supra* note 11, at 177–87; Bartell, Awards of Attorneys' Fees by the Federal Courts (Part 2), 6 A.L.I. A.B.A. Course Materials Journal 63, 83–86 (1982); Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U.Pa.L.Rev. 281, 319–20 (1977) ("The courts should also allow hours expended on unsuccessful claims, unless they are clearly frivolous.... Time should be disallowed only if it reflects duplication, padding, gross over-

staffing, or if it was spent on clearly frivolous claims."); Springer, Fee Awards in Antitrust Litigation, 44 A.B.A. Antitrust L.J. 97, 116 (1975); Annot., 21 A.L.R.Fed. 750, 762 (1974) ("It has been held that plaintiffs are not entitled to an award of attorneys' fees under § 4 of the Clayton Act for the time their attorneys spend on antitrust claims for which no damages are recovered.")

**25.** The Supreme Court may soon provide its guidance on the issue. It has granted certiorari in *Hensley v. Eckerhart,* 664 F.2d 294 (8th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982), in which the issue presented in the petition for certiorari is: "Should award of attorneys' fees, made pursuant to 42 U.S.C. [§] 1988, be proportioned to accurately reflect extent to which plaintiff has prevailed on merits of his lawsuit in district court?" 50 U.S.L.W. 3698.

duplicative. These conclusions were not clearly erroneous.

### B. Customary Fee

In *Copper Liquor II*, we implicitly approved as reasonable the district court's findings that "the customary fee for these services was $100 for lead counsel and $75 for assistant counsel[.]" *Copper Liquor II*, 624 F.2d at 584. We, therefore, may examine only the reasonableness of the fees found by the district court for the period subsequent to July 31, 1978.[26]

Coors can and does challenge the award for attorneys' fees subsequent to July 31, 1978 of $150 per hour for lead counsel and $100 per hour for associate counsel as not supported by the record. It asserts that "work subsequent to the second appeal involved only the issue of attorneys fees—and required no great legal skill—there is no justification for rates higher than $100 and $75 per hour for lead and associate counsel."

 The argument is appealing, but there is no evidence in the record that the customary fee at the time of these services and for this type of services was less than the amount awarded. More than two years had elapsed between the two hearings. Fees, like the cost of all other services, had doubtless advanced in the interim. We decline, without evidence in the record, to substitute our own judgment of a reasonable rate for the rate fixed by the trial judge.

### C. Adjustment of Time and Hour Award

Once the first two steps of the three-part test set forth in *First Colonial* and approved in *Copper Liquor II* have been taken, the district court must perform the final step and adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case. *Copper Liquor II*, 624 F.2d at 583. On remand, the district judge considered our directions. Noting *Johnson* factor (12)—awards in similar cases—he concluded that "[c]onsidering awards in similar cases and weighing the size of the damage award against the vindication of the public right, the court finds that its preliminary estimate of attorneys' fees be reduced by 25%." The district judge reached this conclusion and applied this factor to reduce the attorneys' fees awards for the period before July 31, 1978, as well as for the period after that date.

Coors, of course, does not complain of the 25% reduction in the award. It maintains only that the reduction was applied to a base figure improperly inflated by overestimates of the plaintiffs' counsels' hours and customary fees and asserts that the district court erred in not reducing the award even more because of the small amount of damages awarded (*Johnson* factor (8)—the amount involved and the result obtained). Letcher, on the other hand, asserts in a cross-appeal that the 25% reduction because of *Johnson* factor (12) was an abuse of discretion and that the base amount should have been doubled because of the contingent nature of the plaintiffs' counsel's recovery (*Johnson* factor (6)). Further, Letcher asserts that his counsel is entitled to an enhancement in the award for delay in payment of the fee.

### 1. Reduction in the Award

 In the usual case, once the court has determined the number of hours required and the customary fee for that time, the award should not be reduced below the sum determined by multiplying the two.[27]

---

**26.** We are precluded from addressing Coors's contention that, in assessing the attorneys' fees award for the period prior to July 31, 1978, the district court should have considered the "[h]istoric rates for antitrust litigation prevailing in the district at the times the services were rendered," rather than the prevailing fee at the time of the attorneys' fees determination. We note, however, that the prevalent practice to-day is to use current rates rather than historic rates and thus to compensate counsel for inflation and delay in receipt of payment. *See* E. Larson, *supra* note 11, at 206–09 (and cases cited therein).

**27.** *Accord, Zoll v. Eastern Allamakee Community Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) ("[T]he minimum award should generally be

It is difficult to establish adequate criteria for a reduction below that sum. The visceral reaction, "too much," is as undependable as an ad hoc judgment "too little" would be. If the lawyer devoted no more than the requisite time to the suit and the services were of average quality, he ought to be compensated for at least the sum thus calculated. If counsel has spent an excessive amount of time or if the quality of the services has been poor, the number of hours required should be reduced or the value of the service should be adjusted in the light of the customary fee and the quality of the legal work.[28]

This is not to say that the lodestar is irreducible. In exceptional cases, it may be reduced if there are articulable reasons for that action. Thus, if the case is solely of private interest and involves only money damages, the fee might be egregiously disproportionate to the amount involved.[29] Or the trial judge might decide that counsel had shown demonstrably poor judgment in pursuing too zealously a claim that did not warrant such intensive effort. Other unusual circumstances may likewise warrant a reduction.

In considering the reduction made by the district judge here, we note that in *Copper Liquor II* we did not decide that

not less than the number of hours claimed times the attorney's regular hourly rate."); *Greminger v. Seaborne*, 584 F.2d 275, 279 n.5 (8th Cir. 1978). The Eighth Circuit has recognized, however, that the number of hours claimed and the attorney's regular rate may be disputed.

**28.** *Copper Liquor II*, 624 F.2d at 583. One commentator suggests that the computation of a reasonable hourly rate involves consideration of three of the *Johnson* factors: (3) the skill requisite to perform the legal service properly, (5) the customary fee, and (9) the experience, reputation, and ability of the attorneys. E. Larson, *supra* note 11, at 195.

**29.** In *Copper Liquor II*, 624 F.2d at 584 & n.16, we held that "a modest damage award should not control an attorneys' fee award," and that though the size of the award "should not be ignored" it "should not be the exclusive determination of an attorneys' fee award."

counsel should be awarded at least the lodestar; rather we directed the district judge to increase the award and to give the reasons that guided him in fixing its amount. He attempted faithfully to follow our mandate. The computed lodestar patently amounted to sixteen and one-half times the single damages, and five and one-half times the trebled damages. Finding that the principle vindicated did not warrant such ample recompense, the district judge reduced the fee by 25%. Considering our instructions in *Copper Liquor II*, the discretion imparted to the district judge, the exceptional nature of this case, and the factors mentioned in the district judge's opinion, we are unable to find any abuse in his reduction of the lodestar by 25%.

2. Contingency Adjustment

"Whether the fee is fixed or contingent" is one of the *Johnson* factors that the district judge must consider in calculating the reasonable attorneys' fees, but a "district court is not bound by . . . the agreement of [counsel with his client] as to the amount of attorneys' fees." *Copper Liquor II*, 624 F.2d at 583 n.14. In this case, the district judge acted within his discretion in declining to increase the lodestar amount.[30]

**30.** Allowing an enhancement of the lodestar amount for a contingency factor has been criticized. As one commentator recently noted:

[P]rofound difficulties attend the notion that, the less likely a case was to be won, the larger the fee that the court should award the lawyer who wins it. If the weakest case gets the largest fee, lawyer-client interests will diverge: the triumphant lawyer will be tempted to build up the fee by stressing the weakness of his client's case. In addition, a court will have trouble assessing how likely a claim was to succeed when it has already found the claim meritorious. And it seems perverse to exact larger payments when there was a solid defense and the plaintiff had a weak case, and smaller payments when the plaintiff's case was strong and the defendant's resistance less justified.

Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473, 474 (1981). Professor Leubsdorf suggests that "the contingency bonus should not be tied to a particular claim's probability of success when it was first asserted. Rather, the contingency bonus

## II. COSTS AND EXPENSES

Successful antitrust plaintiffs,[31] like other successful litigants[32] have the right to recover the cost of litigation. The simple term "cost," however, may be misleading because, in ordinary parlance, it is used interchangeably with the word "expense." "Cost" or "costs," as used in the Federal Rules of Civil Procedure and in federal attorneys' fees statutes, usually refers only to those charges that one party may recover from his opponent as an incident to the judgment in the action, not to the total liability he has incurred.[33] "Cost" or "costs" may not, therefore, include everything that the party has spent to achieve victory.

On the other hand, "expenses," in the legal sense, include all of the expenditures made by a litigant in connection with the action. These include costs, which are normally recoverable; "fees," the amounts paid the court or one of its officers for charges usually delineated by statute and usually reimbursed incident to recovery of "costs"; and expenditures that are not normally recoverable from an opponent but must be borne by the litigant absent a special statute or an exercise of judicial discretion.[34]

The antitrust statute permits recovery of reasonable attorneys' fees, thus converting what would, under the usual American rule, be an unrecoverable expense of litigation into a charge against the losing party. Letcher is entitled also to recover costs, properly defined. Finally, we will

discuss whether or not Letcher is entitled to recover any other expenses.

### A. Lump Sum Allowance of Costs

Neither the district court's opinion, Letcher's brief, nor the record provides any analysis of the sum sought to be recovered as costs. Based on estimates by Letcher's counsel that "costs and expenses" amounted to more than $25,000 before July 31, 1978, and $488.57 after that date and some sketchy documentation, the district court simply allowed that amount. The record contains no listing of the items sought to be recovered as costs, no finding by the district court concerning the allowability of items not listed in § 1920, no reference to local rule or practice, no exercise of the discretion imparted to the trial judge, and no adequate basis, therefore, for appellate review. Nor are we bound by our previous opinion as to the amount of expenses found for the period prior to July 31, 1978, except to the extent that we implicitly approved an award of the "plaintiff's *actual expenses* between $16,000 and $25,000." *Copper Liquor II*, 624 F.2d at 584 (emphasis added).

We realize that a remand to determine the sum due as costs will require yet another hearing in this seemingly endless litigation. Despite our reluctance once again to delay the final disposition of this case and the urging of the district court and counsel that, whatever we decide, we not once again remand, they have given us a record that permits no other course. Courts are not accountants and defendants should not

---

should be prescribed for categories of cases and should reflect a judgment about how much encouragement each category should receive." *Id.* *See also* Note, Attorneys' Fees in Individual and Class Action Antitrust Litigation, 60 Calif.L.Rev. 1656, 1670 (1972) ("Although a plaintiff's attorney should be compensated for having assumed the risk of going without any payment, the source of this compensation should be a portion of plaintiff's treble damage recovery rather than the statutory award of a reasonable attorney's fee.").

**31.** 15 U.S.C. § 15.

**32.** Fed.R.Civ.P. 54(d): "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall

be allowed as of course to the prevailing party unless the court otherwise directs[.]" Costs incurred on appeal are taxed against the losing party unless the court directs otherwise. Fed. R.App.P. 39(a). *See generally* Peck, Taxation of Costs in United States District Courts, 37 F.R.D. 481 (1965).

**33.** 6 J. Moore, W. Taggart, J. Wicker, Moore's Federal Practice ¶ 54.70[1] (2d ed. 1982); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2666 (1973).

**34.** *Id.*

be tagged with either cost or expense bills that are horseback estimates. Those who are entitled to recover costs and expenses bear the burden of furnishing a reasonable accounting. Our mandate required the determination of "actual" expenditures, and these must be supported by some evidence. We will, however, endeavor to delineate as clearly as possible the rules to be followed in determining what items are to be allowed if proved.

### B. Section 1920 Costs

■ The costs statute, 28 U.S.C. § 1920, lists only six designated items as taxable costs.[35] If proved, all expenditures for these should be allowed whether or not the original judgment provided for costs. The necessity for express direction that the prevailing party recover these costs is eliminated by the provision in Fed.R.Civ.P. 54(d) that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"

■ The listing in the statute, however, is not exclusive. Some expenditures not listed in § 1920 may be taxed as costs if allowed by a local rule of court or by the custom in a particular district.[36] Other expenditures may be taxed as costs in exceptional cases presenting unusual equitable considerations in order to achieve justice.[37] In affirming a district judge's denial of the cost of daily transcript and of the expense of transporting witnesses to and from Saudi Arabia, items not listed in the costs statute, the Supreme Court has said that rule 54(d)

does not give "district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248, 254 (1964). That decision indicates, however, that the district judge has some discretion to "be sparingly exercised with reference to expenses not specifically allowed by statute." *Id.*

Following these principles, we direct that, in considering the allowability of certain items apparently now disputed, the district court is to follow these guidelines.

1. The Cost of Obtaining Depositions and Transcripts Necessarily Obtained for Use in the Case[38]

■ While some cases hold that the costs of depositions are taxable only if they were either introduced in evidence or used at trial in examining or impeaching witnesses, the more equitable as well as more practical view is to allow the recovery of such expense if the taking of the deposition is shown to have been reasonably necessary in the light of facts known to counsel at the time it was taken.[39]

2. The Cost of a Reasonable Number of Multiple Copies

■ The cost of a reasonable number of copies of deposition transcripts is recoverable if the trial judge in the exercise of his sound discretion determines that the copy was "necessarily obtained for use in the case."[40]

---

**35.** The statutory items are:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title.
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

**36.** 6 J. Moore, W. Taggart & J. Wicker, *supra* note 33, at 54.77[1]; 10 C. Wright & A. Miller, *supra* note 33, at § 2668.

**37.** *Id.*

**38.** 28 U.S.C. § 1920(2).

**39.** *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982); 10 C. Wright and A. Miller, *supra* note 33, at § 2676; 6 J. Moore, W. Taggart & J. Wicker, *supra* note 33, at ¶ 54.-77[4].

**40.** *United States v. Kolesar*, 313 F.2d 835, 840 (5th Cir. 1963) ("The trial Judge must determine whether all or any part of a copy of any

### 3. Fees of Expert Witnesses

Expert witnesses generally may be allowed only the fees allowed "fact" witnesses, as prescribed by 28 U.S.C. § 1821.[41] Courts of appeal have approved trial court discretion to award the full fee charged by the expert in exceptional circumstances,[42] for example, when the expert testimony was necessary or helpful to the presentation of civil rights claims,[43] or indispensable to the determination of the case.[44] If counsel plan to seek allowance of the entire expert's fee, the better practice is to seek court approval before calling the expert witness.[45] The court should consider these factors if counsel seek an allowance for experts in excess of the fee allowed for fact witnesses.

### C. Expenses

Three circuits have held that the Clayton Act, 15 U.S.C. § 15, in allowing the recovery of "the cost of suit, including a reasonable attorney's fee" uses the word "cost" in the same sense as the word "costs" in § 1920 and that the statute precludes the recovery of expenses of litigation not taxable as costs.[46] Despite these decisions it is arguable that, as Professor Moore points out, "had Congress intended 'cost of suit' to include only taxable costs, it would have

said so."[47] The interpretation suggested by Professor Moore appears not only to be a logical reading of the statute, but also is consonant with congressional policy. Allowing a prevailing party treble damages and attorneys' fees but denying recovery for expenses incident to litigation would be anomalous. Accordingly, we hold that the word "cost" in the Clayton Act embraces all the ordinary and reasonable expenses of litigation.

Counsel's expenses, however, may include expenditures of the types mentioned in § 1920 which are not taxable pursuant to that section.[48] For example, some depositions may be found not to have been "necessarily obtained for use in the case," or the court may find that there were no "exceptional circumstances" permitting an award of fees for expert witnesses in excess of the statutory amounts set forth in 28 U.S.C. § 1821. In that event, the district court may be required to decide whether reimbursement for such expenditures should be recoverable as part of the reasonable attorneys' fees even though they cannot be recovered as costs.

Read broadly, some of the cases awarding litigation expenses suggest that these items should be recoverable.[49] This

---

or all of the depositions was 'necessarily obtained for use in the case.' In that evaluation, great latitude and discretion must be accorded the Judge."); *Newman v. A. E. Staley Mfg. Co.*, 648 F.2d 330, 336–37 (5th Cir. 1981) (approving *Kolesar* in dictum); *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1323 (5th Cir. 1978) (reversing and remanding for factual determination by district judge on necessity of copies).

**41.** See *Jones v. Diamond*, 636 F.2d at 1382.

**42.** *Quy v. Air America, Inc.*, 667 F.2d 1059, 1066 (D.C.Cir.1981); *State of Ill. v. Sangamo Const. Co.*, 657 F.2d 855, 865 n.14 (7th Cir. 1981); *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir. 1971).

**43.** *Barry v. McLemore*, 670 F.2d 30, 34 (5th Cir. 1982).

**44.** *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3d Cir. 1981); *Welsch v. Likins*, 68 F.R.D. 589, 597 (D.Minn.), aff'd per curiam, 525 F.2d 987 (8th Cir. 1975).

**45.** *Worley v. Massey-Ferguson, Inc.*, 79 F.R.D. 534, 541 (N.D.Miss.1978). See also *Pizarro-de-Ramirez v. Grecomer Shipping Agency*, 82 F.R.D. 327, 330 (D.P.R.1976); Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, ALI–ABA Course of Study Materials: Civil Practice and Litigation in Federal and State Courts 675, 703 (1982).

**46.** *State v. Sangamo Const. Co.*, 657 F.2d 855, 866 (7th Cir. 1981); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 224 (9th Cir.), cert. denied, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964); *Straus v. Victor Talking Mach. Co.*, 297 F. 791 (2d Cir. 1924).

**47.** 6 J. Moore, W. Taggart & J. Wicker, *supra* note 33, at ¶ 54.71[3].

**48.** Bartell, *supra* note 45, at 713.

**49.** See, e.g., *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978) ("Where attorneys' fees are expressly authorized by statute ... Rule 54(d) is no longer rele-

view eliminates the significance of § 1920 whenever an attorneys' fees award is authorized. It is more logical to give full effect to § 1920 by looking to the statute as the exclusive means of recovering the basic categories of costs listed in it.[50] Adopting this view, we hold that expenditures for those categories of expenses listed in 28 U.S.C. § 1920 may be recovered only if they are allowed by that section. In that event, the expenditures are, of course, costs. Thus, the cost of copies is recoverable only if allowed by 28 U.S.C. § 1920(3). Any excess costs incurred for copies must be borne by the litigant or counsel. The other expenditures not listed in § 1920 reasonably incurred in connection with this litigation are recoverable as attorneys' fees.

### D. Reduction of Costs and Expenses

 While attorneys' fees may be reduced or enhanced for the reasons we have discussed, and while the court has discretion to allow or disallow or to apportion costs,[51] we know of no authority for a percentage reduction of either costs, properly defined, or expenses, recoverable as "cost of suit," based on the factors used by the district court to reduce attorneys' fees. Fees may be increased above the lodestar; the cost of suit may not be. In practice, expenses incurred are not usually reduced because the recovery is small, and there appears to be no correlation between the *Johnson* factors and out-of-pocket expenses. While expenses incurred extravagantly or unnecessarily should be disallowed, this should be done on an item-by-item basis.[52]

Therefore, we must reverse the district court's across-the-board reduction of those charges.

### III. INTEREST

 Letcher urges on cross-appeal that it be allowed post-judgment interest on the award of attorneys' fees, costs, and expenses. Our decision in *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316 (5th Cir. 1978) requires us to affirm the district court's refusal to allow such interest. We there held that awards of attorneys' fees under 15 U.S.C. § 15 are considered "costs" upon which interest has traditionally not been awarded.[53]

### IV. FEES FOR THIS APPEAL

The district court and the plaintiff urge us to fix the attorneys' fees for this appeal, as we have on occasion done in other cases.[54] Because we consider ourselves in the best position fairly to assess the fees due for the services rendered on this appeal, we do so. Based on the affidavits filed by plaintiffs' counsel and on the basis of our own observations of the briefs and the oral argument, we set this fee at $9,309.38.[55]

Accordingly, we affirm the judgment awarding the plaintiffs $247,350 [56] as attorneys' fees and render judgment in addition for $9,309.38 as attorneys' fees for this appeal. We remand for the assessment of taxable costs and the determination of expenses for all aspects of these proceedings. In view of the fact that the remand was necessitated in large part by the failure of plaintiffs' counsel properly to itemize and

---

vant. Instead, the question is whether the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses. We hold that it was."); *Fairley v. Patterson*, 493 F.2d 598, 606 n.11 (5th Cir. 1974) ("Court costs not subsumed under federal statutory provisions normally granting such costs against the adverse party ... are to be included in the concept of attorneys' fees.").

**50.** Bartell, *supra* note 45, at 714.

**51.** Fed.R.Civ.P. 54(d).

**52.** Because it is unnecessary for us to decide the question, we express no opinion concerning the possible reduction of expenses when they are allowed solely as an incident of attorneys' fees. We also do not consider the factors that might lead to an apportionment of costs in an appropriate case.

**53.** In *Gates v. Collier*, 616 F.2d 1268, 1272–73 (5th Cir. 1980), we allowed interest on attorneys' fees recovered under the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988, distinguishing the disallowance of interest under 15 U.S.C. § 15.

**54.** *McGowan v. King*, 661 F.2d 48 (5th Cir. 1981); *Hedrick v. Hercules, Inc.*, 658 F.2d 1088 (5th Cir. 1981); *Davis v. Board of School Com'rs*, 526 F.2d 865 (5th Cir. 1976).

**55.** Affidavits submitted by Letcher's attorney indicate that since June 29, 1981, he has spent 82.75 hours on this case, and has incurred $205 in expenses. The attorney stated in his affidavit that he now keeps time sheets and that this estimate of hours is based on those time records. The attorney, however, did not submit

present the claims for costs and expenses, additional fees for time spent in preparing the bill of costs or for further litigation in connection with that allowance will not be allowed. Costs of this appeal will be taxed 75% to appellant and 25% to appellee.

AFFIRMED IN PART and REMANDED IN PART.

## ON REHEARING AND REHEARING EN BANC

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

any evidence as to his customary fee for this type of work, or any itemized expenses. At the last hearing in the district court, the judge valued the lead counsel's time at $150 per hour. In the absence of any other evidence, we accept the district judge's most recent evaluation of the value of the attorney's time. The lodestar is thus $12,412.50 (82.75 × $150), and we decline to adjust it to reflect any of the *Johnson* factors as we have been presented with no compelling reasons to do so. Since expenses have not been itemized, we remand for further consideration of the appropriate amount of expenses. At $150 per hour, his fee would be $12,412.50. However, there was a cross-appeal

and part of the time was spent on this. We have denied the cross-appeal. Moreover, we have vacated part of the judgment appealed. In view of these factors, we reduce the calculated sum by 25%.

56. Attorneys' fees for work
prior to July 31, 1978 ............ $301,250.00
Attorneys' fees for work
after July 31, 1978 ............ 28,550.00
$329,800.00
Reduced by 25% ............ × .75
$247,350.00