**K.K. COBLE, et al., Plaintiffs,**

v.

**The TEXAS DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**Civ. A. No. H–77–707.**

United States District Court,
S.D. Texas,
Houston Division.

July 25, 1983.

Arthur J. Brender, Fort Worth, Tex., Carro Hinderstein, Houston, Tex., for plaintiffs.

Mary Katherine Conroy, Asst. Atty. Gen., Richard E. Gray III, Gray, Allison & Becker, Austin, Tex., for defendants.

## ORDER

NORMAN W. BLACK, District Judge.

Pending before the Court is Plaintiffs' application for award of attorneys' fees, pursuant to 42 U.S.C. § 2000e–5(k).

Plaintiffs seek attorneys fees and expenses in the following amounts.

**A.  Lead Attorney Art Brender**

| | |
|---|---:|
| Traditional legal work: | |
| 698 hrs. x $150/hr. | $104,700.00 |
| Other (statistical evidence/fee petition): | |
| 76 hrs. x $75/hr. | 5,700.00 |
| Travel time: | |
| 99 hrs. x $15/hr. | 1,485.00 |
| Total | $111,885.00 |

**B.  Local and Co-counsel Carro Hinderstein**

| | |
|---|---:|
| Traditional legal work: | |
| 352.8 hrs. x $125/hr. | $44,100.00 |
| Other legal work: | |
| 3 hrs. x $60/hr. | 180.00 |
| Total | $44,280.00 |

**C.  Original Beneze Attorney – Craig Caldwell**

| | |
|---|---:|
| Traditional legal work: | |
| 58.6 hrs. x $90/hr. | $5,274.00 |
| Total attorney fees | $161,439.00 |

To this figure Plaintiffs ask that a multiplier of 2.25 be applied, citing *Graves v. Barnes,* 700 F.2d 220 (5th Cir.1983).

**D.  Expenses**

| | |
|---|---:|
| Brender | $17,507.87 |
| Hinderstein | 5,410.54 |
| Paralegal | 3,250.00 |
| Total | $26,168.41 |

Defendant objects to the amounts sought on several grounds: (1) Plaintiffs did not prevail on all claims nor obtain the full relief they sought; (2) 119 hours of Mr. Brender's time are not adequately documented; (3) the report and testimony of Plaintiffs' statistical expert, Dr. Tom Marshall, did not contribute to the resolution of the case; (4) Ms. Hinderstein's summary reports do not accurately coincide with her monthly logs; (5) thirty-six of Ms. Hinderstein's hours were duplicative of Mr. Brender's hours. In all, Defendants ask that 516.85 hours of Mr. Brender and 117.3 hours of Ms. Hinderstein be disregarded.

A hearing was held on the attorneys' fees award on May 26, 1983. Subsequently the Court has carefully analyzed Plaintiffs' fee application with the attached affidavits and time records. Plaintiffs diligently treated each of the factors listed in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974) and *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087 (5th Cir. 1982). The Court and the parties are additionally aware of the Supreme Court's very recent opinion in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40, decided May 16, 1983, which held that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.

The district court should start by determining the number of hours reasonably expended and the appropriate rate. The award may be reduced for inadequately documented hours, *Hensley,* 103 S.Ct. at 1939. Hours not "reasonably expended" should be excluded. *Id.* Hours that are not properly billed to one's client are also not properly billed to one's adversary. *Id.* (cite omitted).

The product of reasonable hours times a reasonable rate may be adjusted upward or downward as a result of the application of other factors, including the "crucial" factor of the results obtained. No fee should be awarded for hours spent on unsuccessful claims where such work cannot be deemed to have been expended in pursuit of the ultimate result achieved. *Id.* at 1940. However, where plaintiff's case is based on a common core of facts, different claims for relief or related legal theories should not be viewed as a series of separate "claims." *Id.* And finally, a plaintiff who has obtained exceptional success should be fully compensated. *Id.* The most critical factor is the degree of success obtained. *Id.* at 1941. Applying these principles to the case *sub judice,* the Court finds as follows:

Plaintiff Coble claimed that she had been discriminatorily denied employment as a TDC correctional officer at a male prison facility and sought back pay. Plaintiff Beneze claimed she had discriminatorily been denied housing as a TDC summer intern and sought back pay and damages. Plain-

tiff Coble was denied back pay relief, but Plaintiff Beneze was awarded damages.

The class was successful in its claim of discrimination as to the hiring of females on only a temporary basis as correctional officers ("C.O.'s") in male prison units. The class was not successful on its claim that the Defendant discriminated against women in that (1) only males are hired as C.O.'s in contact positions in male facilities; (2) female C.O.'s are paid lower salaries, receive fewer promotions and fewer fringe benefits; (3) females are underrepresented in all TDC job classifications. (The latter two claims were eliminated when the class was narrowed after trial.)

Of seven claims for relief, Plaintiffs prevailed on three: Plaintiff Beneze's damages, the availability of non-contact positions to female C.O.'s in male prisons; and an affirmative action plan regarding advertising for female C.O. applicants. Plaintiffs were denied back pay and compensation for other benefits to class members, back pay to Plaintiff Coble, and accelerated advancement or promotion of class members.

Defendants have urged that Plaintiffs be denied attorneys' fees for all hours expended on the issues of contact, as opposed to non-contact, C.O. positions, claims pertaining to emoluments and non-salary benefits, class certification, and all work pertaining to statistical analysis of equal pay, promotion, receipt of benefits, and hiring. Pursuant to *Hensley v. Eckerhart, supra,* the Court will disallow time readily identifiable as spent on the equal pay and benefits issue, and all work on statistics. Plaintiffs did not prevail on the benefits issue. Much of the statistical work pertained to the benefits, equal pay and promotion issues. To the extent it sought to prove disparate impact in hiring, the statistical analysis was unreliable and below acceptable standards. The statistical study was unnecessary to prove discrimination in hiring, inasmuch as Defendant TDC admitted such treatment and asserted a BFOQ justification. The Court will not distinguish between time spent on contact positions as opposed to non-contact positions. The testimony and other evidence regarding C.O. functions was necessarily overlapping and intertwined as to these two types of positions, and the functioning of female C.O.'s in either type position in male prison facilities was not treated as two separate issues at trial. The work and testimony on the contact-position issue contributed to the Court's discernment of an appropriate resolution of this case. See *Hensley, supra* at 1940; *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981) (*en banc*). In this regard, the Court will not reduce the attorneys' fee award because of the mid-trial "settlement" discussion between Defendant's attorney Rick Gray and Plaintiffs' attorney Art Brender. Mr. Gray had no settlement authority from the Defendant; the conversation was merely exploratory on his part. At all times throughout the trial, both before and after the subject conversation, the Defendant remained steadfast in its position that it would be totally unfeasible, if not impossible, to place women in any C.O. positions in male facilities.

Plaintiffs' application for attorneys' fees shall be assessed within these parameters.

A. *Attorney's Fees—Art Brender.* Mr. Brender officially entered this case in March 1981 as attorney-in-charge. He has carried the bulk of the weight of the case. Defendant has objected that 119 of Mr. Brender's hours are undocumented; 196.25 hours were devoted to the "contact" positions issue, on which Plaintiff did not prevail; 123.25 hours were devoted to "related" issues, such as employee benefits, and class certification; 100 hours were spent on the statistical work-up, and that 147.5 of Mr. Brender's hours were "unspecified" as to claim or issue. As to the "unspecified" hours, Defendant urges 66% be disregarded as probably spent on unsuccessful claims.

The Court has reviewed Mr. Brender's summary and time sheets and finds some, but not all, of Defendant's points well-taken. Mr. Brender's letter of July 6, 1983, to the Court disputes that certain hours are undocumented. These hours have been rechecked against Mr. Brender's time sheets and an additional 13¾ hours at $100 credit-

ed to him and an additional 5 hours of travel time at $15 per hour. To the extent that any other undocumented hours can be reconstructed by Mr. Brender, the Court believes they are more than adequately offset by giving full credit for unspecified hours and for the large number of "double billed" phone calls between Mr. Brender and Ms. Hinderstein which were allowed.

The Court will disallow the 86.5 undocumented hours that are attributed to traditional legal work and 5 hours of undocumented travel time, the hours attributed to statistical work, and the hours specifically identified as attributable to issues of equal pay and benefits. The remaining hours of non-trial traditional legal work will be allowed at a rate of $100 per hour; trial preparation and trial time will be allowed at $125 per hour; preparation of the fee application at $60 per hour; and travel time at $15 per hour. These fees are within the range of customary fees for similar work in this community. The various hours attributable to each function have been computed from Mr. Brender's time summary.

In applying the remaining *Johnson* factors to the lodestar figure resulting from allowable hours at the customary fee for such service, the Court finds:

1. The questions presented by this case were neither entirely unique nor routine and established. This case was decided under existing case law as applied to the TDC fact-situation; it did not involve any "novel" theory.

2. A certain amount of skill, experience in handling unwilling witnesses, and dogged persistence in dealing with a state agency that was most resistant to change was required. Mr. Brender carried this task off with a remarkable good cheer that succeeded in achieving his goals without unduly antagonizing his opponents.

3. Mr. Brender testified and his time records reflect that preparation of this case for trial consumed most of his time in 1982 and did preclude his accepting or working on other cases to a great extent. He is a member of a two-man law firm.

4. The fee in this case was contingent. Mr. Brender additionally advanced a considerable amount of money for expenses.

5. The case was brought to trial fairly expeditiously once Mr. Brender entered the lawsuit. While the case had been on file for five years when trial began, Mr. Brender had been involved only a year and a half. The attorneys' time and expense money were not tied up for an extended period of time as in *Graves v. Barnes, supra,* (ten-year litigation).

6. The result obtained in this case was significant in terms of the increased number of TDC correctional officer positions now available to women. The monetary amount is impossible to calculate. Plaintiff Coble was not awarded back pay. The number of women who will actually apply for and be hired for C.O. positions in male prison facilities is purely speculative. However, the Court believes that the significant result, coupled with the contingency fee factor, justifies a fee enhancement of 50%.

7. Mr. Brender has been in practice for ten years and is a competent, experienced civil rights attorney.

8. This was not an "undesirable" case and any publicity surrounding it most probably enhanced the attorneys' reputation.

9. Mr. Brender had no previous professional relationship with either Plaintiff and anticipates none in the future.

Mr. Brender is awarded fees as follows:

| | |
|---|---|
| Traditional pre-trial legal work: | |
| 468.25 hrs. at $100/hr. | $46,825.00 |
| Trial preparation and trial time: | |
| 98.5 hrs. at $125/hr. | 12,312.50 |
| Travel time: | |
| 94 hrs. at $15/hr. | 1,410.00 |
| Fee preparation: | |
| 46 hrs. at $60/hr. | 2,760.00 |
| Sub-total | $63,307.50 |
| Enhancement factor = 50% | 31,653.75 |
| Total Brender Fees | $94,961.25 |

B. *Attorney's Fees—Carro Hinderstein.* Ms. Hinderstein is listed on the docket sheet as local counsel and co-counsel to Mr. Brender. She was present throughout the seven-day trial, with responsibility for examining some of the witnesses. She is a sole practitioner, licensed to practice law since

1978. Her law practice is primarily in the field of family and juvenile law. She testified that she is not a civil rights attorney and that her usual fee ranges from $75–$100 per hour. The original fee application sought recovery for 326.55 hours of "traditional" legal work at $125 per hour and 3 hours of "other" legal work (defined as statistical work and fee application preparation) at $60 per hour. Plaintiffs' Exhibit 3 at the May 24 hearing added 26¼ hours at $125 per hour and 13 hours of travel time at $60 per hour.

The Court has spent a substantial amount of time reviewing Ms. Hinderstein's role in this case and examining her time records. First, the Defendant correctly points out the mathematical inconsistencies between her time records and her monthly summaries. Further, travel time was characterized as "traditional legal work" in the original application, and therefore billed at $125 per hour. Third, most of the witnesses whose depositions Ms. Hinderstein attended, and the witnesses she was responsible for at trial testified regarding the unsuccessful and unrelated claims (Dr. Marshall, fact witnesses Parr, Sebastian, Cassidy). But most remarkable, Ms. Hinderstein's time records reveal an incredible paucity of real legal work during the two years she has been involved with this case. The vast majority of entries consist of five-minute telephone calls to other lawyers, both those officially working on the case and others, to her client, to the deputy court clerk. There are entries of errands to the bus station to pick up or mail packages, to the airport to pick up a deposition, to the library to get a copy of a law case, and to serve subpoenas, for all of which she seeks to recover $125 per hour. Time is charged for accepting delivery of depositions by a messenger, for uncompleted telephone calls with the notation "WCB." Post-trial time that is clearly related to the fee application is included in the 327 hours as $125/hr. total.

The Court is disallowing time spent preparing Dr. Marshall for trial, time related to the unsuccessful attempt to intervene in the *Ruiz* case, time when her client dropped by the office to drop off a check, the time expended on the Parr and Cassidy depositions, time for the Estelle deposition which Mr. Brender conducted, travel time for which Ms. Hinderstein is being paid mileage, and time spent trying to find former correctional officers for the May 24 hearing. The last item resulted in no information helpful to the Court and was merely an attempt to relitigate the strip-search issue of the case. The Court will allow Ms. Hinderstein $75 an hour for trial preparation, trial time, and the Balderas, Ramon, and Allen depositions. The Court will award Ms. Hinderstein $50 an hour for the remainder of allowable hours, due to the low level of legal proficiency demanded by most of those tasks. This yields a "lodestar" figure of $16,370. Application of the other *Johnson* factors reveals that: (1) Ms. Hinderstein did not have responsibility for any of the difficult legal questions in this case or perform any difficult legal research; (2) any special skill required by this type of civil rights litigation was provided by Mr. Brender; (3) other than the time immediately preceding and during trial, her time records indicate this case did not preclude other employment; (4) Ms. Hinderstein is not an experienced civil rights attorney; she demonstrated no special skill or competence at any stage of this litigation. In adjusting the fee upward or downward for the "results obtained" factor, the Court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. *Hensley, supra* at 1941. The Court has attempted to eliminate the pretrial hours spent by Ms. Hinderstein on unsuccessful and unrelated claims. The time allowed for trial (99 hours) will additionally be reduced by 50%, since Ms. Hinderstein's principal role at trial was to handle those issues which were unsuccessful. The fact that the fee was contingent has been provided for in Mr. Brender's fee award. The Court does not deem a contingency multiplier appropriate for Ms. Hinderstein. She is adequately compensated through the calculation of the lodestar. *Graves v. Barnes, supra,* at 224.

Pre-trial and post-trial work:
179 hrs. at $50/hr.     $ 8,950.00
Trial preparation and trial:
99 hrs. ÷ 2 = 49.5 hrs. at $75/hr.     3,712.50
Total     $12,662.50

C. *Attorney's Fees—Craig Caldwell.* Plaintiffs request $90 per hr. compensation for Plaintiff Donna Beneze's original attorney, Craig Caldwell, for 58.6 hours expended from November 1977 to September 1979. This period covers the initial discovery stages of the Beneze case, through the consolidation with the Coble case. Mr. Brender testified at the hearing that initial discovery by Mr. Caldwell encouraged him to take this case. Ms. Beneze was successful in her individual claim; however, the Court in its December 20, 1982, Order found that she was not a proper class representative. There was no testimony as to Mr. Caldwell's professional experience. The Court is unfamiliar with the quality of Mr. Caldwell's work since the case was not transferred to this court unit until June 1979, after the consolidation. Virtually nothing was done in this case from June 1979 until after Mr. Brender became attorney in charge in March 1981. For these reasons, the Court finds that an award of $2,500 will adequately compensate Mr. Caldwell for the work he performed in this case.

D. *Expenses:* Plaintiffs seek reimbursement for $26,168.41 in expenses.

1. *Art Brender:* Following the dictates of *Copper Liquor,* 684 F.2d at 1100, the Court has approved the award of fees for those experts whose testimony was helpful to the presentation of Plaintiffs' claims: Robert Sarver, Chester Allen, Michael Fairless, and Michael Cox. The Court is not approving the $9,000 expert fee of Dr. Tom Marshall, whose testimony was neither necessary nor helpful. The Court notes that Plaintiffs did not follow what has consistently been described as "the better practice" of obtaining prior court approval of such extraordinary fees. *Id.* The Court will, therefore, allow Mr. Brender's expenses as itemized in Appendix C of the fee application and in his June 17, 1983, supplement to the fee petition, except as follows:

a. All expenses relating to the preparation of statistics and to Dr. Tom Marshall's participation in the case. The statistical analysis performed by Dr. Marshall pertained largely to the unsuccessful and unrelated claims of sex discrimination in pay and other benefits. The data base provided him by Plaintiffs was inaccurate so that the claims pertaining to pay and promotion were not able to be adequately substantiated. The study did not accurately define the relevant female labor pool.

b. The Court will also disallow the expense of the post-trial Larry Paynter deposition. This deposition was of no value to the Court in evaluating the TDC proposed plan. This was not a reasonable expenditure, considering the witness's limited experience.

c. Summary:

Amount asked $17,507.87

Disallowed:

| | | |
|---|---|---:|
| UTA Computer Search | $ | 13.04 |
| Sims data coding | | 72.00 |
| Marshall deposition | | 83.25 |
| UTA supplies | | 55.50 |
| Marshall air fare | | 95.00 |
| Marshall report typing | | 50.00 |
| Marshall air fare | | 80.00 |
| Marshall lodging | | 99.00 |
| Marshall expenses | | 22.01 |
| Marshall-witness fee | | 9,000.00 |
| Paynter deposition | | 588.40 |
| Total Disallowed | | $10,176.20 |
| Total Brender expenses allowed: | | $ 7,331.67 |

2. *Carro Hinderstein:* The Court will allow as reasonable expenses the items listed in Appendix F of the fee application, and in Plaintiffs' Exhibit 4 at the May 24 hearing, except those expenses clearly relating to Dr. Marshall and the statistical presentation, items clearly relating to the unrelated and unsuccessful claims pertaining to pay and other benefits, and items relating to the post-trial newspaper ads, which produced no information helpful to the Court and which the Court does not believe were reasonable expenses.

| | |
|---|---:|
| Expense amount asked: | $5,410.54 |
| Disallowed: | |
| Mileage to Huntsville for Parr & Cassidy depositions | $ 30.00 |

Disallowed:

| | |
|---|---:|
| Sebastian subpoenas | $ 58.00 |
| Parr deposition | 33.75 |
| Cassidy deposition | 36.25 |
| Trailways-Parr & Cassidy depositions | 4.35 |
| Sebastian deposition | 76.65 |
| Marshall-federal express | 10.50 |
| Newspaper ads | 302.22 |
| Total Disallowed | $551.72 |
| Total Hinderstein expenses allowed | $4,858.82 |

3. *Paralegal*—The Court will disallow compensation of $3,250.00 for the time the Plaintiffs themselves expended in helping to prepare their own cases for trial, including "four trips to Huntsville." The 130 hours appear to include travel time. Neither Plaintiff is a trained paralegal. The statistical analysis offered at trial was unprofessionally done and contributed nothing to the resolution of this case. The Court does not find that any legal research performed by Plaintiff Coble aided in the disposition of the case.

Defendant's request that a percentage of the "unspecified" hours be disallowed is denied. The Court believes that the application of the above-stated criteria makes any further adjustment of attorneys' hours unnecessary.