**J.T. GIBBONS, INC., Plaintiff,**

v.

**CRAWFORD FITTING COMPANY, et al., Defendants.**

**Civ. No. 79–1127.**

United States District Court, E.D. Louisiana, New Orleans Division.

April 5, 1984.

Alioto & Alioto by Joseph M. Alioto, and Gary D. Elion, San Francisco, Cal., for plaintiff.

Ernest Mansour, Cleveland, Ohio, for defendant Fred A. Lennon.

McGlinchey, Stafford, Mintz & Cellini by Dando B. Cellini, and Victoria L. Knight, New Orleans, La., for defendant Crawford Fitting Co.

Thomas E. Balhoff, Baton Rouge, La., for defendants Capital Valve & Fitting Co., Inc. and R.D. Jennings.

Charles E. Hamilton, New Orleans, La., for defendant Thomas A. Read & Co., Inc.

## MEMORANDUM OPINION

PALMIERI, Senior District Judge.[*]

### I. BACKGROUND

These cross motions deal with the allowance and disallowance of costs in an antitrust action. The action in question, brought under sections one and two of the Sherman Act, was tried to a jury from November 2, 1981, to November 19, 1981.

At the end of the entire case, a directed verdict was entered in favor of defendants on all of plaintiff's claims. Defendants' counterclaim for malicious prosecution, alleging that plaintiff's suit was part of a scheme to wrongfully extort a distributorship from defendant Crawford Fitting Co. ("Crawford"), was submitted to the jury. The jury returned a verdict in favor of plaintiff on the counterclaim.[1] On November 24, 1981, judgment was entered dismissing plaintiff's complaint with costs to defendants and dismissing the counterclaim without costs. On December 28, 1981, defendants' motion for judgment notwithstanding the verdict or new trial on the counterclaim was denied.[2]

On May 9, 1983, the Fifth Circuit unanimously affirmed this Court's rulings in all respects. *J.T. Gibbons v. Crawford Fitting Co.*, 704 F.2d 787 (5th Cir.1983). The deadline for petitioning the United States Supreme Court for writs of certiorari passed without the filing of a petition by any party on August 8, 1983, and the judgment entered on November 24, 1981, in defendants' favor became final.

On November 30, 1983, defendant Crawford, on behalf of all defendants, filed its bill of costs, together with a supporting memorandum and documentation. At a hearing before the Clerk of the Court for the Eastern District of Louisiana on December 9, 1983, at which no one appeared on behalf of plaintiff, all costs requested by defendants were taxed with the exception of expert witness fees and attorneys' fees and expenses incurred in connection with a discovery trip to Scotland. The total costs taxed were $57,480.70. The amount of costs denied was $150,480.70.

On December 15, 1983, plaintiff filed a motion to review costs. Plaintiff's motion

* Hon. Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. The jury answered "yes" to the following interrogatory: "Did Gibbons bring this lawsuit in good faith after full disclosure of the facts within the knowledge of Messrs. Richard and Cecil Keeney to their attorneys?"

2. This Court filed two opinions—one granting the defendants' motion for a directed verdict and one denying defendants' motion for judgment notwithstanding the verdict on the counterclaim. *J.T. Gibbons, Inc. v. Crawford Fitting Co., Inc.*, 565 F.Supp. 167 and 186 (E.D.La.1981).

requests the setting aside of the full amount of costs taxed against it on the grounds (1) that the award of costs was barred under the doctrine of res judicata and collateral estoppel and (2) that defendants' bill of costs was not timely filed. In addition, plaintiff specifically challenges the costs taxed by the clerk for charts, audio-visual aids and transcripts.

On December 16, 1983, defendants filed a motion for review of costs, requesting this Court to exercise its discretion to award the costs denied by the clerk.

## II. DISCUSSION

### A. *Plaintiff's Motion for Review of Costs*

#### 1. *Res judicata and collateral estoppel*

Plaintiff contends that principles of res judicata and collateral estoppel preclude the awarding of *any* costs to defendants. Plaintiff claims that the amount sought by defendants as costs was included in defendants' $1,760,000 claim for damages in the counterclaim. Since the jury found against the defendants on the counterclaim, plaintiff argues that defendants may not now "relitigate" the issue of their entitlement to these costs. Plaintiff's argument is frivolous.

In the judgment entered on November 24, 1981, and the decision granting defendants' motion for directed verdict filed on December 4, 1981, this Court dismissed plaintiff's complaint and exercised its discretion under Fed.R.Civ.P. 54(d) to award defendants the costs incurred in defending a legally baseless antitrust suit. Nothing in the decision denying defendants' motion for judgment notwithstanding the verdict on the counterclaim contradicted this directive. In effect, plaintiff now asserts that this Court erred in granting defendants their costs in the main case.

Plaintiff's brief is repleat with decisions enumerating the general principles of res judicata and collateral estoppel. Not one of these decisions applies the doctrines of res judicata or collateral estoppel to deny a litigant its costs. The reason for this is that the doctrines of res judicata and collateral estoppel have no applicability to the issue of costs.

■ It is true that the doctrine of res judicata precludes a litigant from relitigating issues that were or could have been raised in an earlier action. Here, however, defendants are not "relitigating" anything. No new lawsuit has been filed. Defendants have simply filed a bill of costs pursuant this Court's order, entered under Fed.R.Civ.P. 54(d), allowing the defendants their costs in the antitrust action. The principles of res judicata have no applicability under such circumstances.

Defendants have not "split" any cause of action. Nothing precluded defendants from excluding the amount requested as costs from the counterclaim and claiming this amount in a separate bill of costs. Moreover, this court is aware of no reason why defendants could not have refrained from filing a counterclaim, collected their costs upon the successful conclusion of the antitrust action and then filed a malicious prosecution lawsuit against plaintiff for their other expenses. The fact that defendants chose to include their demand for costs, as well as other expenses, in their counterclaim, upon which the jury found against them, does not deprive defendants of their entitlement to a discretionary award of costs under Fed.R.Civ.P. 54(d) in the main case. The jury had no power to deprive defendants of this right.[3] Additionally, it is noteworthy that the damages sought by the defendants on their counterclaim far exceeded any costs in the case. They sought reimbursement of legal expenses incurred by them up to that point and which exceeded one and one-half million dollars.

In short, plaintiff's contention that principles of res judicata and collateral estoppel

---

**3.** The counterclaim was submitted to the jury on the same evidence as that on which the Court based its decision to grant directed verdicts on the antitrust claims. The presentation of the counterclaim involved no additional evidence.

preclude an award of any costs to defendants in this case is nothing short of frivolous.

### 2. *Timeliness of bill of costs*

Plaintiff claims that defendants' delay in filing its bill of costs completely bars taxation of costs against plaintiff. Plaintiff argues that to permit defendants to recover costs now would violate the directive of Fed.R.Civ.P. 1 that the Federal Rules "be construed to secure the just, *speedy,* and inexpensive determination of every action." (Emphasis added). Plaintiff further contends that it has been prejudiced by the filing of the bill of costs at this time.

Judgment was entered in this case on November 24, 1981. The Fifth Circuit rendered its opinion of affirmance on May 9, 1983, and the deadline for the filing of a petition for certiorari passed on August 8, 1983. The bill of costs herein was filed on November 30, 1983.

■ Rule 54(d) does not place any time limits upon the filing of a bill of costs, and the determination of whether the taxation of costs in a particular case is time-barred lies entirely within the discretion of the trial court. It is true that Rule 54(d) must be interpreted in light of the mandate of Rule 1 that the Federal Rules be construed to secure the just, *speedy,* and inexpensive determination of every action. Thus, a delay in the filing of a bill of costs which the trial court determines to be unreasonable would lead to the denial of the taxation of costs. This, however, is not such a case.

The cases cited by plaintiff are not in point. The case of *United States v. Pinto,* 44 F.R.D. 357 (W.D.Mich.1968), where a delay of almost four years in filing a bill of costs was held to violate Rule 1, involved a simple consent judgment from which no appeals followed. In *Woods Construction Co. v. Atlas Chemical Industries, Inc.,* 337 F.2d 888, 891 (10th Cir.1964), a local rule required the filing of a bill of costs within 10 days after the entry of judgment. In contrast, this case is not governed by any local rule and involved an appeal to the Fifth Circuit and a possible petition for certiorari to the United States Supreme Court. The facts in this case are closer, although even more favorable to defendants here, to those in *United States v. Hoffa,* 497 F.2d 294 (7th Cir.1974). In *Hoffa,* costs of prosecution[4] were taxed to defendants where a bill of costs was presented over eight years after entry of judgment. Defendants' appeals had taken over seven years and the bill of costs had been filed within one year of the entry of final judgment in the case. The Seventh Circuit noted that the circumstances of the particular case must be considered in determining whether the delay is reasonable and that:

> [w]hile eight years is obviously a long time, nevertheless—in view of the complicated nature of the case, the series of appeals encompassing seven years, the fact that the bill was filed within one year after the final culmination of the case, the obvious situation that the costs were not going to be paid until every appellate avenue had been exhausted, and the absence of a local rule—we are unable to say the delay violates Rule 1. Therefore, the district court did not abuse its discretion in taxing costs to appellants.

*Id.* at 296.

The bill of costs in this case was presented within six months after the Fifth Circuit's decision in this case and within four months after the passing of the deadline for the filing of a petition for certiorari. Such a delay cannot, in the absence of exceptional circumstances, be considered unreasonable.

■ Plaintiff claims that it has been prejudiced by the defendants' delay in filing its bill of costs. However, the plaintiff has not described the manner in which it has been prejudiced, and this Court is un-

---

**4.** The rules for the imposition of costs in criminal cases are the same as in civil cases. *Id.* at 296.

able to discern any basis for this claim.[5] Under the circumstances, this Court finds no unreasonable delay on the part of the defendants in filing their bill of costs.

### 3. Specific items to which plaintiff objects

#### a. Charts and audio-visual aids

Plaintiff objects to the award of costs for charts and audio-visual aids. These charts and audio-visual aids were the following:

Four charts were prepared by L.R. Langhard concerning the sale of Crawford's products in the North Sea area. These charts were essential to refute plaintiff's claim of lost sales in that market.[6] The charts were introduced into evidence, and, although they were shown to the jury in connection with expert testimony, they were not merely illustrative of such testimony, but had independent significance. *See* 6 Moore's Federal Practice ¶ 54.77[6] at 1741.

Falls Advertising Co. ("Falls") was retained by defendants to provide essential audio-visual assistance, including preparation of charts depicting defendants' organization and distribution scheme. This distribution scheme, attacked by plaintiff as anti-competitive, was the focal point of the litigation. A clear understanding of this scheme was essential and the use of charts exemplifying it was necessary to the proper presentation of defendants' case. Falls also provided a projector and screen which were used by both defendants and plaintiffs during the testimony to enlarge and display simultaneously to the Court, the jury, and the witness, key documents in the case. Without this aid, the handling of exhibits would have been time consuming and possibly confused. Indeed, the Court had requested the use of such a device prior to trial as a means of shortening the trial time and facilitating the presentation of voluminous documentary evidence. Both these purposes were fully served at trial.

Falls provided other necessary services. Prior to the litigation, Richard M. Keeney, president of plaintiff, undertook to make extensive tape recordings of conversations he initiated with various defendants concerning his alleged inability to obtain Crawford products.[7] Falls worked extensively with the tapes, filtering them to make them easily understandable and devising an access system. These tapes were introduced as evidence in the case. The evidentiary value of these tapes was significantly enhanced by Falls efforts.

This case involved a variety of alleged antitrust violations. The issues involved in these various allegations would have been very difficult for a jury to resolve, and these inherent difficulties were excerbated by the complex corporate organization and distribution structure of defendant Crawford and its numerous independent distributors. To prevent plaintiff from exploiting the high probability of jury confusion in this case, it was necessary for defendants to prepare and use at trial the charts and audio-visual aids described above. This case could not have been fairly and efficiently tried before the jury without the benefit of the charts and audio-visual aids for which costs are sought here.

■ In some courts, the costs challenged by plaintiff are allowable under 28 U.S.C. § 1920(4).[8] *See* 6 Moore's Federal Practice ¶ 54.77[6] at 1739 and cases cited at n. 10 ("The reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats and kindred materials is taxable as costs under § 1920(4) when necessarily obtained for use in the case.")

---

5. Plaintiff intimates that it would be prejudiced by the unavailability of the trial judge to decide its motion. This concern has proved unfounded.

6. Each of the charts for which costs are sought were listed in the pretrial order entered pursuant to Fed.R.Civ.P. 16.

7. *See J.T. Gibbons, Inc. v. Crawford Fitting Co., Inc.,* 565 F.Supp. at 177 n. 6 (E.D.La.1981) (regarding substance of taped conversations.)

8. *See* note 15 *infra* for text of 28 U.S.C. § 1920.

The Fifth Circuit, however, has taken a restrictive view of the materials covered under this provision, holding in *Johns Manville Corp. v. Cement Asbestos Products Co.*, 428 F.2d 1381, 1385 (5th Cir.1970), that "[t]here is no statutory provision for the taxation of charts and exhibits as costs." Given this view of the law, it appears that none of the costs requested by defendants under 28 U.S.C. § 1920(4) can be awarded pursuant to that statute. A trial court has equitable discretion, however, to award costs not specifically provided for by statute. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir.1982); *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3rd Cir.1981). The Fifth Circuit impliedly acknowledged this principle in *Johns Manville*, but disallowed an award of costs for charts and exhibits because no prior court approval had been obtained for the production of such materials. *Johns Manville*, 428 F.2d at 1385. *Accord Studiengesellschaft Kohle v. Eastman Kodak*, 713 F.2d 128, 133 (5th Cir.1983) (en banc); *United States v. Bexar County*, 89 F.R.D. 391 (W.D.Tex. 1981); *Hiller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 60 F.R.D. 87, 90 (N.D.Ga.1973).

■ Given the necessity at trial for the charts and audio-visual aids for which costs are sought here and the complexity of the case involved, this Court would, were it writing on a clean slate, grant defendants these costs. In view of the absence of prior court approval, however, the Court is constrained by the law of the Fifth Circuit, as set forth in the *Johns Manville* case, to deny costs for all of these items except one—the costs for the operation by Falls of the screen and projector and for the preparation of slides for use in connection therewith. Although no mention was made of costs at the time, the Court considers that

its own request prior to trial is tantamount to prior court approval of these expenditures. This equipment undoubtedly shortened the trial and facilitated the use of documentary evidence. Under the circumstances, the Court would regard it as inequitable to disallow these costs.

In sum, all costs for charts and audio-visual aids are reluctantly denied with the exception of those costs associated with the operation by Falls of the screen and projector and the preparation of slides for use at trial.[9]

### b. *Transcripts*

Plaintiff objects to the taxing of costs for transcripts of depositions and daily trial transcripts.

Charges of the court reporter for transcripts reasonably necessary for use in the case are recoverable as costs under 28 U.S.C. § 1920.[10] Plaintiff acknowledges that defendants may be entitled to costs for transcripts of depositions noticed by defendants. Plaintiff contends, however, that defendants are not entitled to costs for copies of depositions noticed by *plaintiff.* Plaintiff cites two cases in support of this proposition. The first case, *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054 (S.D.N.Y.1977) *aff'd without opinion*, 578 F.2d 1368 (2d Cir.1978), does not appear to support plaintiff's argument. The *Kane* court did disallow costs for depositions noticed by the losing party. However, the disallowance rested on the ground that the losing party had paid for these depositions, and hence "represented no expense to" the prevailing party. *Id.* at 1059. Defendants herein do not seek costs *plaintiff* incurred in taking the depositions, but rather merely their *own* costs in obtaining for their own use *copies* of depositions noticed by plaintiff. The logic of the *Kane* case is therefore inapplicable here.

---

9. The Court has reviewed the supplemental affidavit of Mr. David Shea, and finds that the amount of $18,494.28 was reasonably expended by defendants in connection with the operation

of the projector and screen and the preparation of slides for use at trial.

10. See note 15 infra for text of 28 U.S.C. § 1920.

■ The other case cited by plaintiff, *Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. 158 (S.D.N.Y. 1969), along with several other district court decisions cited by Professor Moore in his federal practice treatise, *see* 6 Moore's Federal Practice ¶ 54.77[4] at 1724 n. 21, does appear to support plaintiff's contention. Other, more persuasive, authority does not, however, support plaintiff's position. In *SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 181 (7th Cir.1979), the Seventh Circuit held that "[t]he expense of deposition copies reasonably necessary for use in the case may be included in the award of costs" and that this rule "applies to copies of both an *opponent's* and the prevailing party's own depositions." *Accord Murphy v. Amoco Production Co.*, 558 F.Supp. 591, 594 (D.N.D.1983), *aff'd on other grounds*, 729 F.2d 552 (8th Cir.1984); *Principe v. McDonald's Corp.*, 95 F.R.D. 34, 37 (E.D.Va.1982). The Seventh Circuit relied heavily on the reasoning of a Fifth Circuit case, *United States v. Kolesar*, 313 F.2d 835 (5th Cir.1963), which, although not specifically addressing the issue whether costs are taxable for copies of an opponent's as well as a prevailing party's deposition, directly supports the rule adopted in *SCA Services, Inc. See United States v. Kolesar*, 313 F.2d 838–40. *See also Copper Liquor, Inc. v. Adolph Coors Company*, 684 F.2d 1087, 1099 (5th Cir.1982) (reaffirming *Kolesar*) *reconsidered en banc*, 701 F.2d 542 (5th Cir.1983) (relevant holding undisturbed). The Seventh Circuit noted:

> Attorney's offices are often distant from the courthouse where the original transcript of the deposition is filed; but, even if they are not, the practicalities of preparing a case for trial often require that the attorneys have frequent and ready access to the depositions, and that they be able to mark annotations and cross-references on the pages.

*SCA Services, Inc. v. Lucky Stores*, 599 F.2d at 181. This reasoning is essentially the same as that of the Fifth Circuit in *Kolesar*, and, as the Seventh Circuit recognized, is equally applicable to depositions noticed by losing parties as to those noticed by prevailing parties. This Court declines, therefore, to deny defendants costs for copies of certain depositions solely on the ground that such depositions were noticed by plaintiff rather than by defendants.

Plaintiff further contends that transcripts of depositions obtained merely for defendants' convenience are not taxable as costs and that "[d]efendants' memo is significantly lacking in specifics regarding the necessity of deposition transcripts [they] obtained for use in this case."

■ Costs may be taxed under 28 U.S.C. § 1920(2) for deposition transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). A deposition need not be used at trial to be taxable. *Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. at 162. Rather, such depositions are taxable as long as "the taking of the deposition is shown to have been reasonably necessary in the light of facts known to counsel at the time it was taken." *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir.1982). Depositions which are merely investigative in nature are not taxable. 6 Moore's Federal Practice ¶ 54.77[4] at 1723; *Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. at 167. However, the trial court has broad discretion to allow such costs and the burden is on the losing party to show the impropriety of taxing a particular deposition as a cost. *See Principe v. McDonald's Corp.*, 95 F.R.D. at 36; *Meder v. Everest & Jennings, Inc.*, 553 F.Supp. 149, 150 (E.D.Mo.1982); *Ingersoll Milling Machine Co. v. Otis Elevator Co.*, 89 F.R.D. 433, 435 (N.D.Ill.1981). "Unless the opposing party interposes a specific objection that a deposition was improperly taken or unduly prolonged, deposition costs will be taxed as having been 'necessarily obtained for use in the case' within the meaning of 28 U.S.C. § 1920." *Meder v. Everest & Jennings, Inc.*, 553 F.Supp. at 150. *Accord George R. Hall, Inc. v. Superior Trucking Co.*, 532 F.Supp. 985, 994 (N.D.Ga.1982); *Federal Savings & Loan Insurance Corp. v. Szarabajka*, 330

F.Supp. 1202, 1210 (N.D.Ill.1971). Plaintiff, in contending that defendants have failed to properly justify the taxation of depositions in this case, fails to recognize that it is *its* burden to demonstrate that the depositions should *not* be taxed. Plaintiff has not advanced any reason why any of the depositions at issue here should not be taxed and has thus totally failed to meet this burden.

Moreover, defendants have adequately demonstrated in their initial and supplemental memoranda and affidavits in opposition to plaintiff's motion [10a] that all the depositions at issue here were necessary for use in the antitrust case. Depositions which are introduced into evidence at trial or used during cross-examination are "necessary for use in the case." The depositions of the following witnesses were introduced in whole or in part into evidence and/or used for purposes of cross-examination at the trial of the antitrust case: Simon Thornhill, Bernard Pemberton, Richard Keeney, Irving B. Ozanne, and Wilbur Daigle.

Other depositions, although not introduced into evidence or used during cross-examination, were necessary for use in the antitrust case in light of the facts known at the time they were taken. The depositions of the following persons fall into this category: Michael Keeney, Ken Rolfs, Morris Forsythe, James Sullivan, Clifton Ryan, Robert Douran, Henry Dauterive, David Schaub, Ralph Fishman, and Cecil Keeney.

Michael Keeney was part owner and vice president of plaintiff and thus was intimately acquainted with its operations, including whether or not plaintiff had a source of supply for valves and fittings.

Ken Rolfs and Morris Forsythe were employees of plaintiff responsible for taking orders from customers and placing orders with suppliers. Each had knowledge of plaintiff's purchases and sale of valves and fittings from defendants and from other manufacturers of valves and fittings. This knowledge was relevant to the boycott issue of whether plaintiff had a source of supply of valves and fittings and also to the definition of the market as being broader than Crawford's products. Moreover, Mr. Forsythe had knowledge of the shipping practices of plaintiff, a key issue in this suit.

James Sullivan and Clifton Ryan were both employees of plaintiff involved in export sales. As recounted in plaintiff's witness list, each had knowledge of the operation of plaintiff's business, plaintiff's relations with customers and suppliers and the purchase and sale by plaintiff of products lines.

Robert Douran and Henry Dauterive were both potential trial witnesses who did accounting work for plaintiff. As stated in the pretrial order, each had knowledge of the costs and profitability of plaintiff, including its valves and fitting business, and the damages claimed by plaintiff as a result of the alleged unlawful conduct of defendants.

Cecil Keeney, the father of plaintiff's owners, David Schaub, one of the attorneys initially retained by plaintiff in connection with this case and Ralph Fishman, another of the attorneys first retained by plaintiff, were involved in negotiations with defendant Crawford regarding an alternate source of supply of Crawford products during the time plaintiff claimed it was being subjected to an antitrust boycott. Their depositions were taken in order to help defendants prepare to defend plaintiff's boycott claim.[11]

Each of the above persons was a potential trial witness at the time the depositions were taken, and, indeed, until the time of trial, as confirmed by their having been listed as "will call" or "may call" witnesses in the pretrial order.

---

**10a.** All the affidavits and the supplemental memorandum requested by the Court from defendants have been served upon plaintiff. Plaintiff has informed the Court that it does not wish to respond to any of these papers.

**11.** David Schaub and Ralph Fishman were called in plaintiff's case in chief.

The Court finds that the depositions of the above persons were necessarily obtained for use in the case. Furthermore, given the complexity and size of the case, the Court finds that *copies* of all deposition transcripts were also necessarily obtained. *See Studiengesellschaft Kohle v. Eastman Kodak,* 713 F.2d 128, 134 (5th Cir.1983); *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316, 1323 (5th Cir.1978) *overruled on other grounds, Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542 (5th Cir.1983) (en banc).[12]

In sum, all deposition costs requested by defendants are allowed.

■ Plaintiff also challenges the award of costs for daily trial transcripts. Given the complexity of the case, the amount claimed, and the length of the trial, daily transcripts must be regarded as having been necessarily obtained for use in the case, and costs for such daily transcripts must be allowed. Plaintiff argues, however, that defendants are entitled to only "their share" of such costs, without anywhere explaining what the term "their share" means.

Defendants have supplied an affidavit and supporting documentation to the effect that they paid $26,607.00 for daily trial transcripts. The sum is reasonable and this is the amount to which defendants are entitled.

B. *Defendants' Motion for Review of Costs* [13]

1. *Expert witness fees*

Rule 54(d) of the Federal Rules of Civil Procedure provides that, in the absence of other statutory authority, "costs shall be allowed as of course to the prevailing party, unless the court otherwise directs." The issue here is whether defendants are entitled to the amount requested as costs for expert witness fees.

■ It is clear that not all expenses incurred by a party in connection with a lawsuit constitute recoverable costs. Generally, courts award only those costs specifically enumerated by statute, rule of court, or in the custom, practice or usage of a particular district.[14] *See* 6 Moore's Federal Practice ¶ 54.77[1] at 1701 (2d ed. 1983).

■ The basic statutory enumeration of allowable costs is 28 U.S.C. § 1920.[15] Among the expenses taxable as costs under this statute are "fees and disbursements for ... witnesses." The general rule, however, is that expert witness fees are not taxable as costs beyond the statutory per diem fee, mileage, and subsistence allowance provided for under 28 U.S.C. § 1821.[16]

---

12. Although the Court finds, given the complexity of the case, that all counsel had need for copies of the deposition transcripts at issue here, the Court notes that it would be particularly unjust to have expected defendants' trial counsel, who resided in Cleveland, Ohio, to have traveled to the courthouse in New Orleans whenever he needed to use a deposition transcript.

13. It should be noted that plaintiff specifically objects to the awarding of costs for expert witness fees or expenses of the Scotland deposition.

14. The Court understands that it is the general policy of the Clerk of the Court for the Eastern District of Louisiana not to tax expert witness fees as costs.

15. Section 1920 provides:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
28 U.S.C. § 1920.

16. Section 1821 provides in relevant part:
(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order

*Henkel v. Chicago, St. Paul, Minnesota & Omaha Railway Co.*, 284 U.S. 444, 446, 52 S.Ct. 223, 224, 76 L.Ed. 386 (1932); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981); *Burgess v. Williamson*, 506 F.2d 870, 879 (5th Cir.1975); *Baum v. United States*, 432 F.2d 85, 86 (5th Cir.1970); *United States v. Kolesar*, 313 F.2d 835, 837 (5th Cir.1963); *Green v. American Tobacco Co.*, 304 F.2d 70, 77 (5th Cir.1962); 6 Moore's Federal Practice ¶ 54.77 [5.–3] at 1734 (2d ed. 1983); 10 Wright & Miller, Federal Practice and Procedure, Civil § 2678.

 Several exceptions to this general rule have developed, however. Fees for court-appointed experts may be taxed as costs beyond the statutory subsistence and travel allowance. 28 U.S.C. § 1920(6); *Worley v. Massey-Ferguson, Inc.*, 79 F.R.D. 534, 540 (N.D.Miss.1978). Expert witness fees may be taxed as costs in some cases where "the court is satisfied that the

situation is exceptional *and the court makes an order* to that effect *prior to the expert being called.*" 6 Moore's Federal Practice ¶ 54.77[5.–3] at 1735 (2d ed. 1983) (citation omitted) (emphasis added). In diversity cases, expert witness fees may be taxed as costs when state law so provides. *Henning v. Lake Charles Harbor & Terminal District*, 387 F.2d 264, 267 (5th Cir. 1968). A recent trend has been to allow the taxation of expert witness fees beyond the statutory allowance in civil rights cases. *Berry v. McLemore*, 670 F.2d 30, 34 (5th Cir.1982); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981). Authority for such taxation of expert witness fees has been found in congressional intent to encourage the initiation of civil rights actions.

 None of the exceptions set forth above apply in the instant case,[17] and defendants do not attempt to invoke any of these theories. Rather, defendants rely on a rule recently adopted by the Third and

---

of a court of the United States, shall be paid the fees and allowances provided by this section...

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking

receipt), shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title.

(d)(1) A subsistence allowance shall be paid to a witness (other than a witness who is incarcerated) when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

(2) A subsistence allowance for a witness shall be paid in the amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government....

28 U.S.C. § 1821.

17. Expert witness fees beyond the statutory limitation have also been awarded "when an unfounded action or defense is maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971). Despite the utter baselessness of plaintiff's antitrust claims in this case, as set forth in the Court's earlier opinions, the jury verdict on the counterclaim would appear to preclude reliance upon this theory for the awarding of expert witness fees in this case. *See* note 1 *supra*.

Eighth Circuits which holds that district courts have equitable discretion to award expert witness fees exceeding the statutory allowance whenever the expert's testimony is indispensable to the determination of the case. *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3d Cir.1981); *Paschall v. Kansas City Star Co.*, 695 F.2d 322, 338–39 (8th Cir.1982), *rev'd on other grounds*, 727 F.2d 692 (1984) (en banc); *Welsch v. Likins*, 68 F.R.D. 589, 596–97 (D.Minn.), *aff'd* 525 F.2d 987 (8th Cir.1975) (affirmed per curiam on basis of district court's opinion). *See also Shakey's Inc. v. Covalt*, 704 F.2d 426, 437 (9th Cir.1983) (denying costs for expert witness fees, but implying that the "indispensability" rule is valid in the Ninth Circuit). This rule has been specifically rejected by the District of Columbia Circuit. *Quy v. Air America, Inc.*, 667 F.2d 1059, 1066–1068 (D.C.Cir. 1981). *See also Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 864–865 (7th Cir.1981) (strict rule limiting expert witness fees to statutory allowance, but no specific discussion of indispensability rule).

In rejecting the indispensability rule, the District of Columbia Circuit relied on the Supreme Court's decision in *Henkel v. Chicago, St. Paul, Minnesota & Omaha Railway Co.* 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932). The Court stated:

> Under [the predecessor statute to § 1821] additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed in cases in the federal courts. The Congress has dealt with the subject comprehensively and has made no exception of the fees of expert witnesses.

*Id.* at 446,[18] 52 S.Ct. at 224–225.

Both the Third and Eighth Circuits have held, however, that a subsequent Supreme Court case, *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), qualified *Henkel* so as to allow district courts discretion to award

experts' fees as costs when expert testimony is indispensable to the resolution of the case. *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d at 203–06; *Paschall v. Kansas City Star Co.*, 695 F.2d at 338–39. In *Farmer*, the Supreme Court upheld a district court's refusal to tax travel expenses and stenographer's fees as costs, under circumstances in which the district judge found that the prevailing party had deliberately run up a "huge bill of costs." The Supreme Court held:

> We think that under the circumstances [the district judge] could not be charged with any improper exercise of the discretion vested in him by Rule 54(d). We do not regard that Rule as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny .... Therefore the discretion given district judges to tax costs should be sparingly exercised *with reference to expenses not specifically allowed by statute*. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation.

*Farmer*, 379 U.S. at 235, 85 S.Ct. at 416 (emphasis added).

In *Paschall*, the Eighth Circuit held that this language in *Farmer* "authorizes district judges to award costs not specifically enumerated in 28 U.S.C. § 1821." *Paschall*, 695 F.2d at 338. The Eighth Circuit went on to hold that this language affords district courts discretion to award expenses for expert witness fees when expert testimony is "crucial" or "indispensable" to the determination of the case. *Id.* at 339.

The Third Circuit also found authority for the indispensability rule in the *Farmer* opinion. After quoting the language from

---

**18.** It should be noted that the Supreme Court has never had occasion to construe the current versions of 28 U.S.C. §§ 1821 and 1920.

*Farmer* relied on by the Eighth Circuit in *Paschall,* Judge Gibbons wrote:

> *Farmer* appears to hold that Rule 54(d) authorizes district judges to exercise discretion—albeit "sparing"—to award costs not ·specifically enumerated in § 1821. The Court seemed concerned to avoid taxation of unnecessary and possibly vexatious costs accumulated by a prevailing party. Hence the reference to a national policy in favor of restrained award of costs. It is important to note that the Court based its interpretation of Rule 54(d) not on a *Henkel* -like theory of statutory preclusion of costs not listed in § 1821, but on policy considerations militating against award of unenumerated costs. A district court should therefore carefully scrutinize the prevailing party's bill of costs in order to assure that any award will compensate only those expenditures necessary to the litigation. While *Farmer* commands perhaps a tight-fisted exercise of discretion in order to insure moderation in the cost of litigation, it does not mandate parsimony to the extent of precluding recovery of legitimate and indispensable litigation expenditures.
>
> We therefore agree with the District of Minnesota and the Eighth Circuit that *Farmer* affords a district court equitable discretion to award expert fees when the expert's testimony is indispensable to determination of the case.

*Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d at 206 (Footnote omitted).[19]

Although the Fifth Circuit has long adhered to the basic rule that expert witness fees are generally not taxable as costs beyond the statutory allowance, this Circuit has never had occasion to pass specifically on the validity of the indispensability rule adopted by the Third and Eighth Circuits. Moreover, the only Fifth Circuit case specifically mentioning the indispensability rule appears to leave the door open to its application in this Circuit.

> Expert witnesses generally may be allowed only the fees allowed "fact" witnesses, as prescribed by 28 U.S.C. § 1821. Courts of appeal have approved trial court discretion to award the full fee charged by the expert in exceptional circumstances, for example, when the ex-pert testimony was necessary or helpful to the presentation of civil rights claims, *or indispensable to the determination of the case.* [citing *Roberts* and *Welsch v. Likins*] If counsel plan to seek allowance of the entire expert's fee, the better practice is to seek court approval before calling the expert witness. The court should consider these factors if counsel seek an allowance for experts in excess of the fee allowed for fact witnesses.

*Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1100 (5th Cir.1982) (citations omitted) (emphasis added) *reconsidered en banc,* 701 F.2d 542 (5th Cir.1983) (relevant language undisturbed).[20] Furthermore, the *Copper Liquor* Court specifically embraced the view stated by Judge Gibbons in *Roberts* that the Supreme Court in *Farmer* acknowledged the equitable discretion of trial courts to award costs not specifically enumerated by statute. *Id.* at 1099. In this connection, the Fifth Circuit stated that expenditures other than those provided for by statute "may be taxed as costs in exceptional cases presenting unusual equi-

---

**19.** Although the district court from which the appeal in *Roberts* was taken had a local rule granting the court discretion to award expert witness fees when the expert testimony was crucial to the resolution of the issues in the case, it is clear that the Third Circuit's holding with respect to district courts' discretion to award expert witness fees was not dependent on this local rule.

**20.** Surprisingly, this case was not cited by defendants on this issue.

The Court has considered the ·fact that no prior approval was sought for the expenses at issue here. The Court notes, however, that the *Copper Liquor* Court did not establish lack of prior approval as an absolute bar to the awarding of expert witness fees as costs, as did the court in *Johns Mansville* with respect to charts and exhibits. Under the circumstances of this

table considerations in order to achieve justice." *Id.* [21]

In view of the Fifth Circuit's statement in *Copper Liquor* and the absence of any specific disavowal of the indispensability rule by this Circuit, the Court considers itself free to adopt the persuasive reasoning of the Third Circuit in *Roberts* and the Eighth Circuit in *Paschall.* This Court believes that the Third Circuit in *Roberts* and the Eighth Circuit in *Paschall* properly construed *Farmer* as having modified the *Henkel* rule so as to grant district courts discretion to award as costs "legitimate and indispensable litigation expenses," including expert witness fees, beyond those specifically provided for by statute.[22] *Roberts,* 651 F.2d at 206. It is particularly appropriate to award defendants the costs of indispensable expert witness testimony under the circumstances of this case, where defendants were forced to defend an extremely burdensome, vexatious, and totally meritless array of antitrust claims.[23]

The question now becomes, then, whether the expert testimony fees for which defendants seek reimbursement was "crucial" or "indispensable" to the presentation of their case. Defendants seek an award of costs for the fees of three expert witnesses—Dr. Thomas R. Saving, Dr. Phillip R. Robers, and Mr. James C. Boland.

Dr. Thomas R. Saving is an expert economist who testified to the competitive impact of the practices challenged by plaintiff. Dr. Saving analyzed the economic impact of defendant Crawford's organizational scheme, the territorial restrictions imposed by Crawford on its distributors, the five percent commission-sharing program for extra-territorial sales, and the exchange rate adjustments made by Crawford during 1978—all matters challenged as "anticompetitive" by plaintiff. As the Eighth Circuit noted in *Paschall,* 695 F.2d at 339, issues of economic impact are crucial in antitrust cases, and Dr. Saving's testimony was indispensable to the determination of such issues in this case. Indeed, this Court relied heavily on Dr. Saving's market and currency analyses in deciding defendants' motions for directed verdicts.[24]

Dr. Philip R. Robers, a partner with the independent public accounting firm of Ernst & Whinney, also supplied evidence crucial to the defense of plaintiff's group boycott claim. Dr. Robers' testimony established that not only was plaintiff undamaged by its inability to obtain products

---

case, the Court does not feel that the lack of prior approval requires the denial of these costs.

**21.** A district court in this Circuit has repeatedly indicated its approval of the rule that expert witness fees may be awarded as costs where the expert's testimony is indispensable to the presentation of the prevailing party's case, although it has sometimes declined to award such fees under the specific circumstances of a particular case. *Worley v. Massey-Ferguson, Inc.,* 79 F.R.D. 534, 541 (N.D.Miss.1978), *citing with approval Yarbrough v. Town of Ackerman,* Civil Action No. EC 75–163–K (N.D.Miss. Feb. 25, 1977); *Brooks v. Town of Sunflower,* Civil Action No. GC 71–57–K (N.D.Miss. Mar. 27, 1975) (cited and distinguished in *Worley, supra* ). *See also Pate v. General Motors Corp.,* 89 F.R.D. 342, 344 n. 2 (N.D.Miss.1981) (stating that the general rule against the taxing of expert witness fees beyond the statutory allowance "is not inflexible," and that "[u]nder unusual, exceptional or extraordinary circumstances, in the interest of justice and fair play, expert witness fees may be allowable as part of costs"); *Wade v. Mississippi Cooperative Extension Service,* 64 F.R.D. 102, 105 (N.D.Miss.1974) (citing and distinguishing *Brooks, supra* ).

**22.** Even the District of Columbia Circuit, in rejecting the indispensability rule, acknowledged that the awarding of expert witness fees beyond the statutory amount would be appropriate under "exceptional circumstances." *Quy v. Air America, Inc.,* 667 F.2d at 1066. Despite the jury verdict against defendants on the counterclaim, the utter baselessness of plaintiff's antitrust claims and the existence of considerable evidence in the record indicating that plaintiff was using this litigation to obtain a Louisiana distributorship, may well constitute "exceptional circumstances" so as to allow the awarding of costs for expert witness testimony under the standard adopted by the District of Columbia Circuit.

**23.** Additionally, it became apparent during the trial that defendants had been subjected to abusive documentary discovery, costing them very considerable expense and inconvenience, and that plaintiff had made scant use of this discovery.

**24.** *See J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 565 F.Supp. at 180, 183, 185 n. 15.

from defendant Capital Valve, but that it actually received better delivery times and rates from another supplier after its discontinuance by Capital. This testimony was clearly necessary to this Court's determination that plaintiff had failed to prove any injury. The lack of injury was central to the decision to grant directed verdicts in defendants' favor and was relied on by the Fifth Circuit in affirming that ruling.[25]

Mr. James C. Boland, also of the Ernst & Whinney firm, testified about plaintiff's claim of lost profits arising out of defendants' alleged refusal to deal. Mr. Boland testified that an extensive review of plaintiff's financial data revealed that plaintiff actually lost money on its exportation of valves and fittings. Mr. Boland's testimony would have been crucial on the issue of plaintiff's damages had plaintiff's claims been allowed to go to the jury. The quantum of damages became irrelevant, however, upon the disposition of the case by directed verdicts in defendants' favor. Moreover, this Court specifically declined to rely on Mr. Boland's testimony in reaching its decision to grant directed verdicts. *See* 565 F.Supp. at 181. Nor was his testimony relied upon by the Fifth Circuit in affirming this Court's decision. Under these circumstances, Mr. Boland's testimony cannot be regarded as indispensable, and costs for his testimony are therefore denied.

In sum, the expert testimony of Drs. Saving and Robers was crucial and indispensable to the presentation of defendants' case. Mr. Boland's testimony cannot be so regarded. Additionally, and upon review of the documentation submitted in support of defendants' bill of costs, the Court determines that the amounts requested for Drs. Saving's and Robers' testimony are reasonable. The amounts so requested are hereby allowed.

### 2. *Scotland deposition*

Defendants ask this Court to exercise its equitable discretion to award them as costs the expenses and attorneys' fees incurred in connection with a journey to Scotland to take certain depositions. The circumstances surrounding this journey are as follows.

Hydrasus (Aberdeen) Ltd. was the customer in Aberdeen, Scotland to whom plaintiff exported products it purchased from defendant Crawford's distributors. Early in the course of discovery, plaintiff represented that Hydrasun had knowledge of facts at issue, and particularly the alleged losses claimed by plaintiff as a result of the alleged boycott. Moreover, Hydrasun formally assigned to plaintiff any and all rights of action it might have had against defendants in exchange for plaintiff's agreement to retain counsel to pursue any such rights and to pay Hydrasun one-third of any recovery.

From almost the inception of this lawsuit, defendants attempted to procure the depositions of Stanley Frazer and William Cameron, two principals at Hydrasun. Because of the tremendous expenses and difficulties incident to obtaining discovery outside of the United States, defendant Crawford agreed to plaintiff's request to make Crawford's Scottish distributor available in this country at its own expense, in exchange for plaintiff's commitment to use its "best efforts" to make Messrs. Cameron and Frazer similarly available. The Crawford distributor from Scotland, Dave Cheetham, was deposed by plaintiff in the United States pursuant to this agreement early in the litigation.

Attempts by defendants to depose Frazer and Cameron, however, met with no success, despite repeated requests by defense counsel. In early June of 1980, plaintiff stated that it was bringing these witnesses in for the trial and that defendants could depose them at that time, a proposal clearly unacceptable to defendants. On June 6, 1980, a court order was entered directing that Stanley Frazer and William Cameron be made available for deposition in the United States, upon agreement by defendants to pay their expenses.

---

**25.** *See J.T. Gibbons v. Crawford Fitting Co.,* 704 F.2d at 793 n. 4, 565 F.Supp. at 180.

These depositions did in fact commence in early July of 1980. It became apparent at that time that Mr. Cameron had been in New Orleans conferring with plaintiff in early May of 1980. Mr. Cameron confirmed in his own deposition in July of 1980 (taken pursuant to court order) that he had been in New Orleans in May of that year, and that he had expected his deposition to be taken, and did not know why it had not gone forward at that time. Plaintiff had made neither defendants nor the court aware of this visit, merely insisting throughout the course of the discovery that it would do its best to make these witnesses available.

Frazer and Cameron insisted on leaving their depositions early for personal reasons. A conference before the magistrate was held, after which it was ordered that defendants be accorded a full and fair opportunity to depose these witnesses and examine documents in Scotland. A subpoena duces tecum was then served on the witnesses and another conference held to resolve objections thereto. These objections were disposed of, and the witnesses ordered to respond to proper requests at the designated time and place in Scotland.

On July 20, defendants sent three attorneys, Messrs. Mansour, Balhoff, and Cellini to take the ordered depositions. Accompanying counsel were the executive vice-president of defendant Crawford, the president of defendant Capital Valve and a court reporter. No one appeared on behalf of plaintiff. Hydrasun was represented by New Orleans counsel and by Scottish counsel.

At this time, Frazer and Cameron expressed a reluctance to divulge the financial documents requested. Defense counsel explained that these documents were necessary because of plaintiff's allegations of damage and because of plaintiff's recent motion to join additional defendants filed on June 19, 1980. These additional defendants included authorized Crawford distributors in Scotland and Norway who would, if joined, be required to furnish financial data. Hydrasun declined to produce business information it regarded as confidential (fearing that it would be revealed to its competitors), unless plaintiff agreed to withdraw its motion to join defendants. By telphone that same date, plaintiff's counsel declined to do so. Accordingly, the deposition concluded, with no testimony taken and no documents produced. On September 19, 1980, plaintiff voluntarily withdrew its motion to join defendants.

Defendants went to great expense to obtain orders compelling discovery from Frazer and Cameron, to fly them to the United States for essentially aborted depositions, and to fly defense counsel to Scotland to resume the depositions pursuant to court order. All of this expense ultimately counted for nothing, as the witnesses finally refused to involve themselves in any way with the matter. This expense was attributable to plaintiff's manifold evasions and vexatious changes of position.

 The law is clear that attorneys' fees and travel expenses incurred in connection with the taking of a deposition usually are not taxable costs. *United States v. Bexar County*, 89 F.R.D. 391, 394 n. 5 (W.D.Tex.1981); *Hope Basket Co. v. Product Advancement Corp.*, 104 F.Supp. 444, 451 (W.D.Mich.1952); 4 Moore's Federal Practice ¶ 26.82 (2d ed.1983); 6 Moore's Federal Practice ¶ 54.77[2] (2d ed.1983). However, under circumstances evidencing bad faith, vexatiousness or oppressiveness, an award of such costs may be made under the court's general equitable power. *See United States v. Bexar County*, 89 F.R.D. at 394 n. 5 (travel, lodging and subsistence expenses incident to taking of depositions not taxable, in absence of prior court approval, *without a showing of extraordinary circumstances*); *Hope Basket Co. v. Product Advancement Corp.*, 104 F.Supp. at 451 ("no finding of unfairness or bad faith on the part of the plaintiffs or any finding of other equitable considerations which would justify an award of these attorney's fees and expenses as taxable costs."); 4 Moore's Federal Practice ¶ 26.82 (2d ed.1983); 6 Moore's Federal Practice ¶ 54.77[2] (2d ed.1983). Such equitable con-

siderations clearly exist in this case. Plaintiff's conduct in this matter provides evidence of palpable vexatiousness. Under these circumstances, it would be unfair to force defendants to bear the costs of taking the court-ordered depositions in Scotland.

The court has reviewed the affidavits submitted in support of defendants' request for expenses incurred in connection with the Scotland deposition. The Court deems the amount requested for attorneys' fees and travel expenses actually paid by defendants to be reasonable under the circumstances. The Court notes that those who traveled to Scotland on defendants' behalf used a private airplane owned by Crawford to fly from Cleveland, Ohio to Aberdeen, Scotland and back. The affidavits submitted in support of the request for costs incurred in connection with the Scotland deposition trip do not state the amount expended for the use of this airplane. This being the case, the Court adopts the rate suggested by defendants, namely the rate of 24 cents per mile, the maximum statutory amount allowed government employees traveling on government business by private airplane. 5 U.S.C. § 5704. At this rate, a total of $1,758.48 (24 cents × 7,327 miles) is allowed for the transportation of all six persons traveling to Scotland on defendants' behalf. This amount is surely far less than the commercial airfare would have been and must be deemed reasonable under the circumstances.

In sum, $11,390.40 is allowed for attorneys' fees and general travel expenses incurred in connection with the Scotland depositions and $1,758.48 is allowed for the use of a private airplane to travel to Scotland and back.

## III. CONCLUSION

This court has pondered the argument that plaintiff acted as a private law enforcer and that it and others like it should not be deterred in pursuing violators of the antitrust laws by the assessment of substantial costs against it. There are several answers to this. The first is that there must be some limits and some discipline applied even to law enforcement in this sense. The defendants were subjected to massive discovery and gigantic litigation costs by this action. The costs allowed by this decision are small by comparison. As this court had occasion to point out at an earlier stage of the litigation, *J.T. Gibbons, Inc. v. Crawford Fitting Company*, 565 F.Supp. at 192:

> This case involved multimillion dollar claims of corporations against one another for alleged damages occasioned by their business activities. None of the individuals involved were poor. On the contrary, the evidence indicated they were all highly successful, intelligent businessmen.

It would be inequitable to relieve plaintiff of the obligation to pay the minimal costs assessed in this case.

The second answer is that the plaintiff in this case was clearly interested in advancing its own financial interests. Far from vindicating the public interest, there was considerable evidence in the record indicating that the Keeney's were using this litigation to obtain a Louisiana distributorship from Crawford Fitting Company.

The third answer is that the public interest is not served when a complex antitrust case containing all the abstruse verbiage known only to antitrust practitioners, and having no merit whatever, is thrust upon our overcrowded court dockets. This is a blatant disservice to the court system and to those litigants whose cases demand attention.[26]

26. Commenting on the role of trial judges in deterring the abuse of the court system, Chief Justice Burger said the following in his annual message on the administration of justice:

Judges in some State courts and in Federal courts have exercised their discretionary authority to impose sanctions both on attorneys and their clients for filing frivolous cases and for abuse of discovery processes. In one state case, a trial judge held that the plaintiff's case was based on totally frivolous allegations and ordered the payment of nearly two million dollars in fees and expenses. Another judge imposed heavy costs against both the plaintiff

The following is a summary of the costs allowed and disallowed in this case. The costs taxed for service of subpoenas ($89.55), witness fees ($1,610.00), depositions ($9,747.65) and daily trial transcripts ($21,607.00) stand as taxed by the clerk. The costs taxed under the category "exemplification and copies" are denied with the exception of $18,494.28 paid to Falls Advertising Company for the operation of the projector and screen at trial and the preparation of slides used in connection therewith. Costs for expert witness fees paid to Dr. Thomas R. Saving ($37,255.70) are allowed, as are those paid to Dr. Phillip Robers ($49,225.00). Costs for expert witness fees paid to Mr. James C. Boland ($64,000.00) are disallowed. Costs for expenses incurred in connection with the deposition trip to Scotland are allowed in the amount of $13,148.88.

An outline of the costs allowed and disallowed is as follows:

### ALLOWED

| | |
|---|---:|
| Service of subpoenas | $ 89.55 |
| Statutory witness fees | 1,610.00 |
| Daily trial transcripts | 21,607.00 |
| Costs incident to taking of depositions and copies of deposition transcripts | 9,747.65 |
| Operation of projector, screen and preparation of slides | 18,494.28 |
| Expert witness fees | 86,480.70 |
| Scotland Deposition | 13,148.88 |
| | $151,178.06 |

### DISALLOWED

| | |
|---|---:|
| Audio-visual aids | $ 6,191.37 |
| Expert witness fees | 64,000.00 |
| | $ 70,191.37 |

In conclusion, defendants are hereby awarded $151,178.06 in costs.

SO ORDERED.

and the attorney based on the State's new Civil Code of Procedures that authorized trial judges to impose sanctions on parties and attorneys who litigate in bad faith.

Annual Message on the Administration of Justice from Chief Justice Warren E. Burger, Midyear Meeting, American Bar Association (Feb. 12, 1984).