**ZAPATA GULF MARINE CORPORATION, etc.**

v.

**PUERTO RICO MARITIME SHIPPING AUTHORITY, et al.**

Civ. A. No. 86–2911.

United States District Court, E.D. Louisiana.

Oct. 12, 1990.

482

Edward F. Kohnke, IV, Joseph N. Mole, M. Shawn McMurray, Lemle & Kelleher, New Orleans, La., for plaintiff.

Dando B. Cellini, J. Forrest Hinton, Victoria K. McHenry, Alexander M. McIntyre, Jr., McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for defendants.

## ORDER AND REASONS

MENTZ, District Judge.

The court addresses here the motions of the plaintiff, Zapata Gulf Marine Corporation (Zapata), for costs and for prejudgment interest against the defendant, Trailer Marine Transport Corporation (TMT).

The plaintiff filed this private antitrust suit for treble damages under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 on July 10, 1986. On January 8, 1990, approximately three and one-half years later, the parties presented the case to the jury. After an eight-week trial, the jury returned a verdict in favor of the plaintiff for fourteen million dollars in actual damages.

Title 15 U.S.C. § 15 permits a successful antitrust plaintiff to recover treble damages, costs, and attorneys fees. A plaintiff may also recover prejudgment interest in limited circumstances.[1] In accordance with

---

1. Title 15 U.S.C. § 15 provides:

**(a) Amount of recovery; prejudgment interest.** Except as provided in subsection (b), any

the provisions of § 15, the court entered judgment in favor of the plaintiff, and against TMT in the amount of $41 million dollars, together with attorneys' fees and costs. Zapata then filed a motion to fix the amount of costs and to recover prejudgment interest.[2]

## I. MOTION TO TAX COSTS

Zapata seeks to recover $247,108.64 in costs, itemized as follows:

| | |
|---|---:|
| Fees of the Clerk | $ 60.00 |
| Fees for service of summons and complaint | 7.00 |
| Fees of the court reporter for daily transcripts | 7,602.00 |
| Fees of the stenographer for deposition transcripts | 61,219.16 |
| Fees for witnesses | 8,353.00 |
| Fees for exemplification and copies of papers in the case | 96,417.05 |
| Fees for translation of documents | 6,972.33 |
| Costs of computer research | 7,660.15 |
| Costs of charts, models, and photographs | 58,861.95 |
| Total | $247,108.64 |

The award of costs is governed by 28 U.S.C. § 1920. That statute provides that the following specific items may be taxed as costs:

(1) Fees of the clerk and marshall;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

TMT does not dispute Zapata's entitlement to or the amount of the fees of the Clerk, the fees for service of summons and complaint, the witness fees, or the costs of computer research. TMT maintains that the court should not award the remaining costs because Zapata either failed to provide specific itemization and documentation or failed to show that the items are recoverable as a matter of law.

### A. Fees of the Court Reporter for Daily Transcripts

Under 28 U.S.C. § 1920(2), the cost of daily transcripts may be awarded only if the copies were necessarily obtained for use in the case. *See J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 760 F.2d 613, 615–16 (5th Cir.), *modified on other grounds,* 790 F.2d 1193 (1985) (en banc), *aff'd,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 713 F.2d 128, 133 (5th Cir.1983); and *Copper Liquor, Inc. v.*

person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. The court may award under this section, pursuant to a motion by such person promptly made, simple interest on actual damages for the period beginning on the date of service of such person's pleading setting forth a claim under the antitrust laws and ending on the date of judgment, or for any shorter period therein, if the court finds that the award of such interest for such period is just in the circumstances. In determining whether an award of interest under this section for any period is just in the circumstances, the court shall consider only—

(1) whether such person or the opposing party, or either party's representative, made motions or asserted claims or defenses so lacking in merit as to show that such party or representative acted intentionally for delay, or otherwise acted in bad faith;

(2) whether, in the course of the action involved, such person or the opposing party, or either party's representative, violated any applicable rule, statute, or court order providing for sanctions for dilatory behavior or otherwise providing for expeditious proceedings;

(3) whether such person or the opposing party, or either party's representative, engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost hereof.

2. Zapata also filed a motion to fix the amount of attorneys' fees, but that matter is not addressed here.

*Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir.1982), *modified on other grounds*, 701 F.2d 542 (1983) (en banc), *overruled in part on other grounds*, *J.T. Gibbons*, 790 F.2d at 1195. Daily transcripts of trial proceedings are not customary. In this case, the parties infrequently referred to the daily transcripts during testimony. Considering that the trial lasted eight weeks, it is likely that the lawyers personally used the daily transcripts to refresh their memories of past testimony. Any one of the lawyers sitting with trial counsel could have taken notes for that purpose. Both trial attorney's in this case are partners in large law firms with extensive staff support. Accordingly, the court finds that the daily transcripts were obtained primarily for the convenience of the lawyers and were not necessarily obtained for use in the case. *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248, 254 (1964); *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363 (5th Cir.1983).

### B. Fees of the Stenographer for Deposition Transcripts

■ The cost of deposition transcripts is within the parameters of § 1920(2) permitting fees of the court reporter, even though the deposition stenographer is not the official court reporter. *United States v. Kolesar*, 313 F.2d 835, 837–38 (5th Cir. 1963). Deposition costs may be recovered where all or any part of the deposition was necessary for use in the case, notwithstanding that the deposition was not introduced into evidence or used at trial in examining or impeaching witnesses. *See Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1553 (5th Cir. 1984); *Copper Liquor*, 684 F.2d at 1099; *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir.1982); *Ryan v. Southern Natural Gas Co.*, 1989 WL 159338 (E.D.La.Dec. 20, 1989). There is no distinction in the recovery of costs between depositions noticed by an unsuccessful litigant as opposed to a prevailing party. *See J.T. Gibbons*, 760 F.2d at 616.

■ In this case, the plaintiff seeks reimbursement for 56 depositions. About one-half of the people deposed were beyond the subpoena power of the court. Zapata read three depositions into the record; TMT read five into the record. At least twelve depositions were quoted in cross-examination, and in at least sixteen other depositions the deponent explained or provided documents that were introduced into evidence. The other twenty deponents were deposed by the defendants. All but four of the deponents were listed in the pre-trial order as potential witnesses. In these circumstances, the deposition transcripts were necessarily obtained for use at trial and were not merely for the convenience of trial counsel. *See J.T. Gibbons v. Crawford Fitting Co.*, 102 F.R.D. 73, 79–82 (E.D.La.1984), *rev'd in part on other grounds*, 760 F.2d at 616.

### C. Fees for Exemplification and Copies of Papers in the Case

A prevailing party may recover fees for exemplification and copies of papers "necessarily obtained for use in the case." 28 U.S.C. § 1920(4).

■ Zapata seeks a total of $96,345 for photocopies. In support of its claim, Zapata provided the court with thirteen columns of numbers, apparently representing the costs of photocopies made during the course of the litigation. There is no information about what was copied or how the copy was used. Zapata did not give the court any information to determine the necessity of the photocopies. As Zapata's claim for exemplification and copies of papers is essentially undocumented, the claim must be disallowed. *See Copper Liquor*, 684 F.2d at 1098–99; *Walker v. Borden, Inc.*, 115 F.R.D. 471, 473 (S.D.Miss.1986).

### D. Fees for Translation of Documents

■ Although there is no specific statutory provision allowing for costs of translations, the Fifth Circuit has held that translation costs may be properly taxed under § 1920(4). That statute, as discussed above, permits an award of costs for exemplification of papers necessarily obtained

for use in trial. Thus, "the proper standard for the award of translation costs should also be whether they were necessarily incurred." *Studiengesellschaft Kohle,* 713 F.2d at 133.

Zapata seeks $6,972.33 as costs for the translation of the minutes of the meetings of the Board of Directors of the Puerto Rico Maritime Shipping Authority (PRMSA). PRMSA was an alleged coconspirator with TMT. Although PRMSA was dismissed from the suit prior to trial, the court ruled that its actions could be considered in determining whether TMT entered a conspiracy to monopolize trade. Thus, the minutes were relevant to a material issue in the case. Indeed, the minutes were used during the examination of two officers of PRMSA, Roberto Lugo and Walter Huresky. Accordingly, the court finds that the cost of translating the minutes was necessarily incurred for use in the trial.

### E. Costs of Charts, Models, and Photographs

■ There is no statutory provision for taxing the costs of charts, models, and photographs. The law in the Fifth Circuit permits taxation of costs for demonstrative evidence only if there is pre-trial authorization by the trial court. *See Studiengesellschaft Kohle,* 713 F.2d at 113 (citing *Johns–Manville Corp. v. Cement Asbestos Products Co.,* 428 F.2d 1381, 1385 (5th Cir.1970); *Walker,* 115 F.R.D. at 473–74.

Zapata claims $58,861.95 as costs for charts, models, and photographs. Zapata maintains that the costs are taxable because the pre-trial order authorized the use of that type of evidence. The pre-trial order provided:

> Plaintiff may seek to use for demonstrative purposes in opening statement, closing argument and possibly during interrogation of some witnesses, charts, graphs, models, photographs, blow-ups of documents and deposition attachments. None of the above will be offered into evidence.

The pre-trial order contained the same provision for TMT. The parties did not identify any of the specific demonstrative evidence they intended to use at trial.

A general authorization to use demonstrative evidence at trial is not what the law requires to tax the costs of that evidence. That the parties were given general authorization does not amount to a pre-trial finding that the substantial sum of $58,861.95 spent by Zapata was necessary.

The cases where courts have allowed costs for demonstrative evidence all involved a request or authorization by the court for a specific item of evidence. In *J.T. Gibbons,* 760 F.2d at 615, the court approved taxation of the costs of operating audiovisual equipment because the district court's specific pre-trial request for the equipment amounted to pre-trial authorization. Similarly, in *Walker,* 115 F.R.D. at 473–74, the court taxed $85.86 for the cost of a photograph to be introduced at trial where the photograph was listed in the pre-trial order as an exhibit to be offered at trial. In this case, the court did not give pre-trial authorization for Zapata's demonstrative evidence. None of the charts, graphs or photographs for which Zapata seeks reimbursement were identified in the pre-trial order. In fact, they are not identified in Zapata's motion either. The court did not request any of the demonstrative evidence. Therefore, it may not be taxed to TMT. As the court did request the parties to prepare bench books, the court will tax the cost of the binders, $504.88.

### II. MOTION FOR PREJUDGMENT INTEREST

■ Zapata asks the court to impose prejudgment interest on the actual damages awarded by the jury. Under 15 U.S.C. § 15, a court may award prejudgment interest where it is "just in the circumstances".

> In determining whether an award of interest under this section for any period is just under the circumstances, the court shall consider only—
>
> (1) whether such person or the opposing party, or either party's representative, made motions or asserted claims or defenses so lacking in merit as to show

that such party or representative *acted intentionally for delay, or otherwise acted in bad faith*;

(2) whether, in the course of the action involved, such person or the representative, *violated any applicable rule, statute, or court order providing for sanctions for dilatory behavior or otherwise providing for expeditious proceedings*; and

(3) whether such person or the opposing party, or either party's representative, *engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost thereof.* (Emphasis added.)

There are a number of instances in this case where both defendants, TMT and Sea–Land, caused delays.[3] On some occasions the delays were unavoidable. For instance, the defendants sought an interlocutory appeal and stay pending resolution of whether the filed rate doctrine barred the suit. In doing so, the defendants' conduct was not in bad faith or primarily for the purpose of delay. The court certified an appeal of the denial of the defendants' motion to dismiss because the motion involved a controlling question of law on which there is a substantial difference of opinion. On other occasions, the court granted the defendants' requests for continuance because it was in the interest of justice. The complexities of the case required additional time for full discovery and addressing dispositive motions.

There are three instances where the defendants raised frivolous matters that arguably could be the basis for imposing prejudgment interest. In October, 1987, TMT and Sea–Land expressed concern about a possible Rule 11 violation in the filing of this suit. The court allowed a brief period of discovery on that issue. After conducting an *in camera* review of plaintiff's counsel's files, the court ruled that the defendants' concern was baseless. *See* Minute Entry entered March 10, 1988, Rec.Doc. #123. As a result, the defendants never brought a formal Rule 11 charge and the matter delayed the proceedings for only a few weeks.

The defendants subsequently sought leave to file third-party complaints and counterclaims alleging "sham litigation", that is, that the plaintiff was not motivated by a genuine desire for judicial relief, but instead sought to chill competition through litigation. While this issue is different from a Rule 11 claim, it was based on the same evidence the court found insufficient to support a Rule 11 claim. That the defendants persisted in alleging improprieties, despite the court having found no such evidence in plaintiff's counsel's files, was arguably basis for a Rule 11 claim against defense counsel. To accommodate the interests of allowing liberal amendments to the pleadings and avoiding any further delay in resolving the merits of the main demand, the court granted leave to file the amendments, but severed them from the main demand. Therefore, the amended claims alleging sham litigation did not affect the trial date. Whether the third-party claims and counterclaims were in violation of Rule 11 or some other rule was never addressed because TMT dismissed its claims after the jury rendered its verdict on the main demand.

The third frivolous matter raised by the defendants was their joint motion for recusal. It is not necessary to repeat here the court's lengthy findings in support of its ruling that the motion lacked any merit, contained numerous misrepresentations, and was filed for the purpose of delay. *See* Transcript of oral reasons rendered July 19, 1989, Rec.Doc. 397. The court denied the motion to recuse and the Fifth Circuit denied the defendants' petition for writ of mandamus. Thus, the motion for recusal caused little delay in the proceedings.

Although the court views these matters as frivolous, there is no evidence establishing that TMT acted in bad faith. Even assuming that TMT acted primarily for the

---

**3.** Sea–Land is not before the court because it entered a settlement agreement with Zapata a few days prior to trial. TMT and Sea–Land usually took the same position on pre-trial matters.

purpose of delay, no significant delay resulted because the court insisted on moving the case. TMT was never found to have violated any rules sanctioning dilatory behavior. In these circumstances, it would not be just to impose prejudgment interest.[4]

Accordingly,

IT IS ORDERED that:

1) Zapata Gulf Marine Corporation's Motion to Tax Costs is GRANTED IN PART. The Clerk shall amend the judgment to include costs in favor of plaintiff, Zapata Gulf Marine Corporation, and against defendant, Trailer Marine Transport Corporation, in the amount of $84,776.52.

2) Zapata Gulf Marine Corporation's Motion for Prejudgment Interest is DENIED.

---

**4.** Neither the court nor the parties found any case where the court imposed prejudgment interest under 15 U.S.C. § 15(a).